12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 1 2001

Michael N. Milby
Clerk of Court

CAMERON COUNTY, TEXAS, et al.,
                    Plaintiffs,


            v.                           C.A. No. B-01-082


DONALD EVANS, SECRETARY OF
COMMERCE, in his official
capacity; and UNITED STATES
DEPARTMENT OF COMMERCE,
                    Defendants.
_____/


DEFENDANTS' REPLY MEMORANDUM TO
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT


                        ROBERT D. McCALLUM, JR.
                        Assistant Attorney General

                        GREGORY A. SERRES
                        United States Attorney

                        THOMAS MILLET
                        Attorney in Charge
                        D.C. Bar No. 294405
                        Civil Division
                        Department of Justice
                        901 E St., NW
                        Washington, D.C. 20530
                        Tel:(202) 514-3313
                        Fax:(202) 616-8202

                        Attorneys for Defendants.

## Statement of the Nature and Stage of the Proceeding

After defendants filed a dispositive motion directed to plaintiffs' original complaint concerning the release of adjusted census data as the official results for Census 2000, plaintiffs filed their first amended complaint, which repeated the original claims and added a claim for release of the adjusted data, albeit in unofficial form, under the Freedom of Information Act. The filing of the amended complaint mooted defendants' original motion (by superceding the original complaint to which that motion was directed) and imposed on defendants the burden of responding to the amended complaint. Rule 15(a), Fed. R. Civ. P. Defendants therefore answered the amended complaint and filed a dispositive motion directed to that pleading. Virtually simultaneously, plaintiffs filed an opposition to defendants' original dispositive motion. While defendants believe that plaintiffs' opposition was therefore unnecessary, defendants submit this reply to that opposition to insure that their arguments are deemed timely.

## Statement of the Issues to be Ruled Upon by the Court

The following issues were raised in defendants' original motion and were incorporated by reference in the second dispositive motion:

1. Whether, as the Census Bureau continues to study the accuracy of the adjusted data for possible modification and release at a later date, plaintiffs' claims are ripe.

2. Whether plaintiffs have standing to bring their claims, when their claimed harm is a loss of federal and state funds and where they have not claimed that their relative population shares would increase such that they would be eligible for additional funding.

3. Whether plaintiffs' challenge to the revocation of the delegation of authority to decide the adjustment issue to the Census Bureau Director is moot because both the current Acting Director and

1

CMPDF - www.fasiso.com

the Secretary agree that the adjusted data are unreliable and should not be released.

4. Whether defendants violated 13 U.S.C. § 195 by withholding adjusted data determined to be unreliable.

5. Whether the equal protection standard requires release of the adjusted data.

The following additional issues were raised in defendants' dispositive motion directed toward the amended complaint:

1. Whether plaintiffs' FOIA claim must be dismissed for failure to exhaust administrative remedies.

2. Whether the adjusted data may be withheld under FOIA exemption 5 as records reflecting defendants' deliberative processes.[1]

Argument

1. <u>Plaintiff's claims are not ripe</u>. As defendants have argued, the Census Bureau continues to study the A.C.E. results to determine whether adjusted data may reliably be used for future population estimation tasks and expects to conclude those deliberations by mid-October, 2001, making plaintiffs' claims here premature. Thompson Decl., ¶ 25, Exh. 2 to Mot. for Judgment on Pleadings or Summary Judgment, filed September 11, 2001. In response, plaintiffs simply assert generalizations and conclusions concerning the existence of hardship stemming from the denial of funding. No plaintiff, however, attempts to demonstrate an irremediable loss of funds which would occur if resolution of this matter awaits the conclusion of the Census Bureau's deliberations. Absent

---

[1] To avoid repetition, in keeping with the Court's standing Civil Procedure Order, defendants will confine this reply to matters pertaining to the non-FOIA claims. Defendants understand that plaintiffs will file an opposition to their pending motion addressing the FOIA claim and defendants will reply to that opposition, if necessary.

evidence of such a hardship during the brief period before the Bureau's expected decision, this matter is simply not ripe. <u>Ohio Forestry Ass'n, Inc. v. Sierra Club</u>, 523 U.S. 726, 733 (1998).

The cases cited by plaintiffs do not alter this result. In <u>State of Arizona v. Atchison, T. & S.F. R. Co.</u>, 656 F.2d 398 (9th Cir. 1981), plaintiffs challenged the application of a statute which had been enacted but was not yet effective, unlike the situation here, where future action by the Census Bureau may relieve plaintiffs' claimed harms. In <u>Regional Rail Reorganization Act Cases</u>, 419 U.S. 102, 143 (1974), the threatened harm was viewed as inevitable, while in <u>Pennsylvania v. West Virginia</u>, 262 U.S. 553, 593 (1923), the Supreme Court characterized the harm as "certainly impending." In contrast here, the Census Bureau's pending decision concerning the use of adjusted data for future population estimation projects may very well affect how federal and state officials choose to divide funds.[2] Absent some showing of hardship while the Census Bureau continues to review the data, plaintiffs' claims are not ripe.[3]

2. <u>Plaintiffs lack standing</u>. As defendants showed initially, plaintiffs' complaint failed to allege that the population share of any relevant jurisdiction would be sufficiently affected by the adjustment decision such that it could be expected to suffer any injury as the result of funding decisions using the unadjusted data. In response, only one plaintiff, Hidalgo County, has even

---

[2]   The decision in <u>Martin Tractor Co. v. Federal Election Commission</u>, 627 F.2d 375, 379 (D.C. Cir. 1980), <u>cert. denied sub nom. National Chamber Alliance for Politics v. Federal election Commission</u>, 449 U.S. 954 (1980) does not assist plaintiffs. There, the court found a claim of a chilling effect on free speech rights not credible, and thus unripe, where the challenged statute was vague and where plaintiff could seek an advisory opinion from the agency on the statute's meaning.

[3]   In this regard, the Bejarano Affidavit is insufficient. While he identifies several programs which use population data and which provide funding to Cameron County, he pointedly does not indicate that Cameron County is currently suffering from a funding shortfall as a result of the decision not to release adjusted data in March.

3

attempted to make the necessary showing. Thus, all the remaining plaintiffs should be dismissed for lack of standing, as defendants initially explained.

Even Hidalgo County's showing, however, is inadequate. While plaintiffs have submitted a study which purports to conclude that Hidalgo County's population share would increase from adjustment, the study's ultimate conclusion that Hidalgo County would gain in its share of funding is insufficient.[4] On its face, the study concedes that the funding programs studied do not depend on local population alone in their funding formulae, but instead use factors such as the presence of adopted children with special needs (Adoption Assistance Program), age of children, number of children receiving school lunches (Child Care and Development Fund), number of children in foster care (Foster Care Program), number of low income persons needing health care (Medicaid), state population (Social Services Block Grants), population age, income, and cost index (Substance Abuse and Vocational Education Programs).[5] Moreover, all of these programs provide federal funds to states, not localities. Given that factors in addition to population are use in these funding formulae and that the funding goes to the states, these programs cannot be the source of injury sufficient to give any plaintiff standing.[6] While a state might establish a more direct link between these funding programs and the adjustment decision, plaintiffs must pursue their own rights, not those of absent

---

[4] Indeed, this study is unsworn, unauthenticated hearsay, not properly before the Court. See Rule 56(e), Fed. R. Civ. P.

[5] The funding formulae for each program may be found in the following provisions: 20 U.S.C. § 2321 (Vocational and Technical Education); 29 U.S.C. § 730 (Rehabilitation Services); 42 U.S.C. § 673 (Adoption Assistance); § 9858m (Child Care and Development Fund); § 672 (Foster Care Program); § 1397a (Social Services Block Grants); § 1396b (Medicaid); § 300x-1a (Substance Abuse).

[6] In this regard, the Bejarano Affidavit states only that the Cameron County community is affected by these programs, not that the County actually receives funding.

third parties. <u>Secretary of State of Maryland</u> v. <u>Joseph H. Munson Co.</u>, 467 U.S. 947 (1984); <u>Hang</u>

<u>On, Inc. City of Arlington</u>, 65 F.3d 1248, 1251 (5th Cir. 1995). Further, because the allocation of

such funds at the sub-state level is decided by state officials, not the Secretary of Commerce, the

causation element of standing is also lacking even as to this claim. <u>Bennett v. Spear</u>, 520 U.S. 154,

162 (1997).

3. <u>Plaintiffs' statutory claim is wrong.</u>  In response to defendant's original motion to dismiss

plaintiffs' claim that the adjustment decision violated 13 U.S.C. § 195, plaintiffs offer three

responses, none of which is accurate.

First, plaintiffs attempt to distinguish the dismissal of an identical claim under § 195 in <u>City</u>

<u>of Los Angeles, et al. v. Evans, et al.</u>, C.A. No. 01-1671 (C.D.Cal. Apr. 26, 2001) (Exh. 16 to Def.

Mot. to Dismiss), by arguing that this case is somehow different because plaintiffs here seek the

adjusted data for funding purposes, while the <u>Los Angeles</u> plaintiffs sought the data for redistricting.

As a factual matter, the <u>Los Angeles</u> plaintiffs also sought the adjusted data for funding purposes.

Slip Op. at 4.  In any event, § 195 makes no distinction between the Secretary's responsibilities for

producing redistricting data under 13 U.S.C. § 141 or any of the other data production duties

assigned to him.  Rather it applies, where "feasible," to his duties "in carrying out the provisions of

[title 13]." § 195.

Second, in a related attempt to distinguish <u>Los Angeles</u>, plaintiffs also assert that the ESCAP

rejected the adjusted data at low levels of aggregation, such as the census block level data produced

under § 141(c), but accepted the adjusted data as more accurate at higher levels.  Thus, they argue

that the adjusted data should be released to them, as their purpose in seeking the data is not

redistricting, where block-level data are produced under § 141.  This misreads the ESCAP's

recommendation. The ESCAP rejected block-level accuracy as significant for any reason, Exh. 4

to Def. Mot. to Dismiss, p. 27. And, while the ESCAP noted that its measures of accuracy favored

the adjusted data at higher levels of aggregation, such as large counties, the ESCAP ultimately

concluded that the differences between the A.C.E. and demographic analysis, along with the possible

effects of synthetic and balancing error, made those measures of accuracy simply too unreliable to

accept. Id., at 22. Indeed, because demographic analysis can only estimate the population at the

national level, it is at only at that level of aggregation where the troubling differences between the

A.C.E. and demographic analysis can be seen. Id. at 15-16.[7] Plaintiffs' arguments must therefore

be rejected.

Third, plaintiffs argue that the Los Angeles decision incorrectly interpreted § 195. On this

point, plaintiffs rely solely on the Supreme Court's decision on Department of Commerce v. United

States House of Representatives, 525 U.S. 316 (1999). While plaintiffs correctly observe that the

Supreme Court stated there that the most recent amendment to § 195 "changed a provision that

permitted the use of sampling for purposes other than apportionment into one that *required* that

sampling be used for such purposes if 'feasible,'" 525 U.S. at 341 (emphasis in original), plaintiffs'

arguments are flawed. As the court in Los Angeles noted, at the very least, the term "feasible" must

be interpreted to afford the Secretary some discretion to assess the accuracy of sampling-based

census data to be consistent with the overall purpose of the Census Act of achieving accuracy. Slip

op. at 17. To hold otherwise would read § 195 to require the Secretary to release sampling-based

---

[7] To the extent that plaintiffs may be arguing that the rationale for not releasing adjusted block-level data for redistricting does not apply when those data are sought, as here for non-redistricting purposes, that argument must be rejected. The challenged decision here was one not to release adjusted data for redistricting under § 141.

6

data known to be of poor quality.  Further, as both the Supreme Court and the <u>Los Angeles</u> court

noted, the use of sampling referred to in § 195 is that for "nonapportionment information," 525 U.S.

at 341, or "supplementary demographic data," <u>Los Angeles</u>, slip op at 18, contained in the census

long-form, such as "'characteristics of individuals, households, and housing units,'" 525 U.S. at 341

(citation omitted) [8]  Thus, nothing in § 195 requires the Secretary to release adjusted data for funding

purposes.

4. <u>Plaintiffs' equal protection claim must be dismissed</u>.  As defendants pointed out initially,

intentional discrimination is an essential element of an equal protection claim.  Plaintiffs neither

dispute that legal proposition nor argue that they have alleged intentional discrimination by

defendants.  Instead, plaintiffs sole argument is that they have alleged disparate impact, from which

intentional discrimination may be inferred.  The purpose of a motion to dismiss for failure to state

a claim, however,  is to review the legal sufficiency of the complaint, not to weigh the evidentiary

value of the factual allegations.  <u>Waste Control Specialists v. Envirocare of Texas, Inc.</u>, 199 F.3d

781, 786 (5th Cir. ), <u>reh. granted in part, denied in relevant part</u>, 207 F.3d 225, <u>cert. denied</u>, 531 U.S.

956 (2000); Wright & Miller, 5A <u>Federal Practice and Procedure</u>, § 1356 (West 1990). [9]  Thus, while

allegations of disparate impact are not "irrelevant" to a claim of discrimination, <u>Washington v</u>

---

[8] Most households receive the Census "short form," which asks for basic information
concerning the number of inhabitants and their demographic characteristics.  A smaller sample of
households receive the "long form," which, in addition to the short form questions, includes a
number of questions regarding the social, economic, financial, and physical characteristics of the
household. <u>See</u> Exh. 1 to Def. Mot. to Dismiss, p. 3

[9]  The same standard applies to reviewing the legal sufficiency of the complaint, whether
viewed through defendants' original motion to dismiss the original complaint or their motion for
judgment on the pleadings following the amended complaint.  <u>Puckett v. United States</u>, 82 F.
Supp  3d 660, 663 (S.D. Tex. 1999).

7

<u>Davis</u>, 426 U.S. 229, 242 (1976), an essential element of a legal claim of a violation of equal protection, intentional discrimination, is lacking from the amended complaint.

Like the original complaint, the amended complaint simply alleges a disparate impact, First Amended Complaint, ¶¶ 59-61, and asserts that the this disparate impact was the result of a misreading of § 195, not intentional discrimination. <u>Id</u>. at ¶ 58. The omission of any allegation of intentional discrimination from the amended complaint is particularly telling, inasmuch as the amended complaint was filed after defendant's original motion to dismiss, which pointed out this defect in the original complaint. That plaintiffs failed to include the proper allegation in the amended complaint in such circumstances precludes any conclusion that the omission was inadvertent. To the contrary, it highlights that, consistent with both complaints, plaintiffs lack evidence of intentional discrimination such that counsel could, consistent with Rule 11, offer a pleading containing such an allegation of intentional discrimination.

Finally, plaintiffs ignore defendants' argument regarding standing to raise this claim. Plaintiff jurisdictions seek to assert the rights of their Hispanic inhabitants. As noted above, a plaintiffs must assert its own rights, not those of third parties. And neither of the individual plaintiffs asserts any personal injury stemming from the alleged funding losses. Thus, no plaintiff has standing to assert this claim.

Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings or, alternatively, for summary judgment should be granted.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

GREGORY A. SERRES
United States Attorney

THOMAS MILLET
Attorney in Charge
D.C. Bar No. 294405
Civil Division
Department of Justice
901 E St., NW
Washington, D.C. 20530
Tel:(202) 514-3313
Fax:(202) 616-8202
Attorneys for Defendants.

9

Certificate of Service

I hereby certify that Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to

Dismiss, or, in the Alternative, for Summary Judgment was served this 28th day of September,

2001, by placing it in Federal Express, overnight delivery to

                    Rolando L. Rios
                    115 E. Travis
                    Suite 1024
                    San Antonio, TX 78205


                    THOMAS MILLET