*17*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

**JAN 2 5** 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| CAMERON COUNTY, TEXAS, HIDALGO COUNTY, TEXAS et. al. Plaintiffs, v. DONALD EVANS, SECRETARY OF THE DEPARTMENT OF COMMERCE, in his official capacity; and UNITED STATES DEPARTMENT OF COMMERCE, Defendants. | Case No: **B-01-082** |

**NOTICE OF FILING**

TO THE HONORABLE JUDGE :

Since we argued before this Court the Defendants Motion to Dismiss on November 13, 2002,   there have been two district court decisions on the very issues raised in this case: *Carter v. United states Department of Commerce*, CA No. 01-868-RE (D. Ore.) and *Waxman v. Donald L. Evans, Secretary of Commerce*, CV 01-4530 LGB (AJWX).  Both district court decisions have ordered the Department of Commerce to release the adjusted census data.   The *Carter* decision was previously filed with the court by the defendants. The *Waxman* case was just decided on January 22, 2002 and is attached to this notice for the Courts consideration.

Plaintiffs would urge upon this court these two decisions as further arguments on why the defendants motion to dismiss should be denied.

Dated:  January 24, 2002

Respectfully Submitted

_____
ROLANDO L. RIOS

1

SBN: 16935900
FBN: 14370
GEORGE KORBEL
LAW OFFICE OF ROLANDO L. RIOS
MILAM BUILDING
115 East Travis, Suite 1024
San Antonio, Texas 78205
210-222-2102
210-222-2898 fax
rios@world-net.net
ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the notice of interested parties has been sent by first class mail on this the 24 nd day of January, 2002 to:

> Mr. Tom Millet, Esq.
> Federal Programs Branch
> United States Department of Justice
> 901 E. St. N.W.
> Washington D.C.  20530

_____
ROLANDO L. RIOS

2



ENTERED
CLERK, U.S. DISTRICT COURT

JAN 2 2 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 8 2002

CENTRAL DISTRICT OF CALIFORNIA
                            DEPUTY

Priority          X
Send
Enter
Closed
JS-5/JS-6          X
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY A. WAXMAN ET AL., | CV 01-4530 LGB (AJWx) |
| Plaintiffs, | |
| v. | |
| DONALD L. EVANS, Secretary of Commerce, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

## I.   INTRODUCTION

Plaintiffs are sixteen members of the Committee on Government Reform of the United States House of Representatives who seek to compel Defendant, the Secretary of the Department of Commerce ("the Secretary") to disclose certain data from the 2000 Census based on "the Seven Member Rule." See 5 U.S.C. § 2954. By their instant motion, Plaintiffs seek summary judgment. Defendant seeks to dismiss the instant action on the grounds that the Court should exercise its equitable discretion and refrain from hearing the action. In the alternative, Defendant requests that the Court grant summary judgment in his favor on the grounds that the Seven Member Rule does not empower Plaintiffs to compel disclosure of the specific information sought.

For the reasons set forth below, the Court DENIES Defendant's

Docketed
Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3
CLSD

30

motion to dismiss or, in the alternative, motion for summary judgment, and GRANTS Plaintiffs' motion for summary judgment. The Secretary is thus ordered to release the data to Plaintiffs.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. By letter dated April 6, 2001 and transmitted to the Secretary, eighteen minority members of the House Committee on Government Reform (the "Committee"), requested disclosure of adjusted census figures compiled in connection with the 2000 Census. Pls' Statement of Uncontroverted Facts and Conclusions of Law ("Pls' Statement") ¶ 1; the Secretary's Statement of Uncontroverted Facts and Conclusions of Law ("D's Statement") ¶ 1. These congressmen based their request on "the Seven Member Rule" set forth in 5 U.S.C. § 2954. Id. In addition, the letter noted that the Committee has jurisdiction over matters relating to population and demography, including the census. Pl's Statement ¶ 1; Secretary's Statement ¶ 2. By return letter dated June 5, 2001, the Secretary declined to release the requested census information. Pl's Statement ¶ 2; Secretary's Statement ¶ 4.

On May 21, 2001, Plaintiffs filed the instant action seeking declaratory and injunctive relief directing the Secretary to disclose the information requested. Both Plaintiffs and the Secretary subsequently filed the instant motions.

## III.  LEGAL STANDARDS AND ANALYSIS

### A.   Legal Standards

#### 1.   Equitable discretion standard

Defendants argue that this Court should dismiss the

- 2 -



1 instant action because it arises out of an inter-branch dispute

2 between the Executive and Legislative Branches. In doing so, they

3 utilize two cases, <u>United States v. House of Representatives</u>, 556

4 F. Supp. 150 (D.C. Cir. 1983), and <u>United States v. American</u>

5 <u>Telephone & Telegraph Co. (AT&T) et al.</u>, 551 F.2d 384 (D.C. 1976),

6 to support this contention. The <u>House of Representatives</u>, 556 F.

7 Supp. at 150, court noted that "[w]hen constitutional disputes

8 arise concerning the respective powers of the Legislative and

9 Executive Branches, judicial intervention should be delayed until

10 all possibilities for settlement have been exhausted." <u>Id.</u> at 153;

11 <u>see</u> <u>AT&T</u>, 551 F.2d at 394 (noting that "[a] compromise worked out

12 between the branches is most likely to meet their essential needs

13 and the country's constitutional balance.").

14     Defendants also assert that this Court should dismiss the

15 action because it arises out of an intra-branch dispute within the

16 Legislative Branch. In a line of case law, the District of Columbia

17 Circuit has held that "[w]here a congressional plaintiff could

18 obtain substantial relief from his fellow legislators through the

19 enactment, repeal, or amendment of a statute, [a] court should

20 exercise its equitable discretion to dismiss the legislator's

21 action." <u>Riegle v. Fed. Open Market Committee</u>, 656 F.2d 873, 881

22 (D.C. Cir.), <em>cert. denied</em>, 454 U.S. 1082 (1981).

23     **2.   Summary judgment standard**

24     Rule 56 of the Federal Rules of Civil Procedure provides

25 that a court shall grant a motion for summary judgment if "the

26 pleadings, depositions, answers to interrogatories, and admissions

27 on file, together with the affidavits, if any, show that there is

28

- 3 -



1   no genuine issue as to any material fact and that the moving party

2   is entitled to judgment as a matter of law."   Fed. R. Civ. P.

3   56(c). Material facts are those that may affect the outcome of the

4   case. See Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 248 (1986).

5   A dispute as to a material fact is genuine "if the evidence is such

6   that a reasonable jury could return a verdict for the nonmoving

7   party." Id.

8       The moving party for summary judgment bears the initial burden

9   of demonstrating the absence of a genuine issue of material fact

10  for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

11  Rule 56(e) of the Federal Rules of Civil Procedure requires that

12  the party opposing the summary judgment motion "set forth specific

13  facts showing that there is a genuine issue for trial" in its

14  opposition papers.

15      B.   Analysis

16      Plaintiffs base their request for disclosure of the census

17  data on "the Seven Member Rule" set forth in 5 U.S.C. § 2954. This

18  provision entitled "Information to committees of Congress on

19  request" states that

20      [a]n executive agency, on request of the Committee on
        Government Operations of the House of Representatives, or of
21      any seven members thereof, or on request of the Committee on
        Governmental Affairs of the Senate, or any five members
22      thereof, shall submit any information requested of it relating
        to any matter within the jurisdiction of the committee.[1]
23

24  5 U.S.C. § 2954. Plaintiffs argue that a plain language reading of

25  the statute requires that the Secretary disclose the requested

26  information and gives the Secretary no discretion in carrying out

27  _____

        [1] The Committee on Government Reform has since been renamed the Committee on
28  Government Operations of the House of Representatives.

                                - 4 -



this act. Plaintiffs' Memorandum of Points and Authorities ("Pls' Memo") at 6. In so arguing, they emphasize that the statute utilizes the word "shall," the language of command, and that the statute explicitly states that executive agencies must submit "any" information requested of them relating to "any" matter within the committee's jurisdiction. "The use of the broad adjective 'any' confirms the expansive scope of the information that the Committee is entitled to request under the statute." Pl's Memo at 9. Noting that the adjusted census data are within the scope of the Committee's jurisdiction, Plaintiffs conclude that "the Seven Member Rule" mandates that the Secretary disclose the requested information.[2]

Conversely, the Secretary characterizes the action as both a controversy between the Executive and Legislative branches over access to information in the possession of executive officials and between the minority and majority members of the Committee. Secretary's Opposition to Pl's Motion for Summary Judgment and Memorandum in Support of Motion to Dismiss, or in the alternative, Cross-Motion for Summary Judgment ("Secretary's Motion") at 2. Because "[s]eparation of powers principles dictate that this controversy be sorted out in the political realm, not in this or any other court," the Secretary argues that the Court should employ

---

[2] Plaintiffs note that the plain meaning of "the Seven Member Rule" is unambiguous and that resort to legislative history is therefore unnecessary. Nevertheless, they argue that the legislative history is consistent with the plain language of the statute and contemplates full disclosure of the information requested. Pl's Memo at 11. Moreover, as a preemptive strike, they acknowledge the Department of Justice's longstanding view that the purpose of Section 2954 is to serve as a vehicle for obtaining information theretofore embodied in annual routine reports submitted to Congress but contend that this view simply represents the executive's litigation position and is based upon an erroneous reading of the statute and legislative history. Id. at 13.

the doctrine of remedial or equitable discretion formulated by the

District of Columbia Circuit and decline to interpret Section 2954,

thereby dismissing the action. In the alternative, he contends that

summary judgment should be granted in his favor because

notwithstanding its broad language, Section 2954 must be construed

narrowly within the statute's legislative history and context. Id.

at 9. The Secretary maintains that Plaintiffs misconstrue the

legislative history and ignore the fact that Section 2954 was part

of an act that repealed statutes mandating the submission of 128

specific reports to the House and Senate Committees. Id. at 10.

"Section 2 [later codified as Section 2954], as the legislative

history makes abundantly clear, was merely intended to preserve

access to the reports abolished by Section 1 of the Act. Id.[3]

1. **Defendant's position that the Court should refrain from interpreting Section 2954 and instead should dismiss the action**

   a. Inter-branch dispute

   The Secretary first characterizes the instant dispute as a "political skirmish" arising out of an inter-branch dispute between the Executive and the Legislature and argues that as such, this Court should "be loathe to intervene" and should instead leave the matter to be resolved between the political branches. Secretary's Motion at 5. In so arguing, he notes the "array of political remedies available" to settle inter-branch disputes and relies upon two cases, United States v. House of

---

[3] To bolster his position, the Secretary also argues that Plaintiffs' sweeping interpretation of Section 2954 would "raise serious constitutional doubts" because it would require submission on demand against the Secretary of any information in an agency's files on the request of only seven members of the Committee. Secretary's Motion at 17-20.

1   Representatives, 556 F. Supp. 150 (D.C. Cir. 1983), and Un.

2   States v. American Telephone & Telegraph Co. (AT&T) et al.,

3   F.2d 384 (D.C. Cir. 1976), as support for his position tha

4   judicial intervention is neither appropriate nor necessary in tre

5   instant case. Secretary's Motion at 5-7.

6      In House of Representatives, 556 F. Supp. at 153, a District

7   of Columbia district court recognized the proposition that courts

8   have a duty to avoid unnecessarily deciding constitutional issues.

9   In light of this tenet, the court stated that "[w]hen

10   constitutional disputes arise concerning the respective powers of

11   the Legislative and Executive Branches, judicial intervention

12   should be delayed until all possibilities for settlement have been

13   exhausted." Id. This is because "[j]udicial restraint is essential

14   to maintain the delicate balance of powers among the branches

15   established by the Constitution." Id. Based on these principles,

16   the House of Representatives, 556 F. Supp. at 153, court exercised

17   its discretion and dismissed the action. In a similar vein, the

18   District of Columbia Circuit, in AT&T, 551 F.2d at 394, emphasized

19   that when a court "selects a victor, it tends thereafter to tilt

20   the scales" and that as such, "[a] compromise worked out between

21   the branches is most likely to meet their essential needs and the

22   country's constitutional balance." Noting that the parties had

23   already come close to agreement, the District of Columbia Circuit

24   remanded the action to the district court for further proceedings

25   during which the parties were requested to attempt to negotiate a

26   settlement. Id. at 395.

27      The actions taken by the House of Representatives, 556 F.

28

Supp. at 150, and AT&T, 551 F.2d at 384, courts

inapplicable to the instant situation for two reason:

declined to adjudicate the merits of the disputes be:

encouraged settlement only after specifically noting ::.

center constitutional questions" that were raised and that

have to be decided. AT&T, 551 F.2d at 394; see House

Representatives, 556 F. Supp. at 152 ("Since the controversy which

has led to [this case] clearly raises difficult constitutional

questions in the context of an intragovernmental dispute, the Court

should not address these issues until circumstances indicate that

judicial intervention is necessary."). In each case, the

President's power to maintain the secrecy of information pertaining

to national security and law enforcement clashed with congressional

power to investigate and acquire the information. AT&T, 551 F.2d at

384 (a case in which the Department of Justice attempted to block

a congressional investigation into warrantless national security

wiretaps); House of Representatives, 556 F. Supp. at 153 (a case in

which the Department of Justice attempted to block the House from

proceeding with criminal contempt charges against the administrator

of the Environmental Protection Agency for withholding records

alleged to be subject to executive privilege). Under those

circumstances, "a court seeking to balance the legislative and

executive interests asserted [there] would "face severe problems in

formulating and applying standards." AT&T, 551 F.2d at 394. Here,

in contrast, the Secretary has not premised his refusal to release

the requested census information on executive privilege grounds nor

does it appear that such a position would be viable, given the

1   Ninth Circuit's finding that adjusted census records are not

2   subject to privilege and are, in fact, available for disclosure

3   under the Freedom of Information Act ("the FOIA"). See Assembly of

4   the State of Calif. v. United States Dep't of Commerce, 968 F.2d

5   916, 923 (9th Cir. 1992).[4]

6       Even assuming that the instant controversy raises difficult

7   constitutional questions on par with those raised in AT&T, 551 F.2d

8   at 384, and House of Representatives, 556 F. Supp. at 150, and even

9   though the Court agrees that "[c]ompromise and cooperation, rather

10  than confrontation, should be the aim of the parties," House of

11  Representatives, 556 F. Supp. at 153, the Court concludes that

12  judicial intervention is necessary here because there is no room

13  for compromise and cooperation. In fact, both the Secretary and

14  Plaintiffs stated as much during the oral arguments held on the

15  instant motions. Transcripts of January 3, 2002 Telephonic Hearing

16  ("Transcripts of Hearing") at 2-7.[5] The record before this Court

17  reveals that Plaintiffs had made two formal written requests for

18  the census data and had attempted to get responses from individuals

19

20      [4] In fact, a district court only recently held that the particular census information requested
    here was not subject to withholding under the FOIA. Carter et al. v. United States Dep't of

21  Commerce, CV 01-868 RE (D. Or. November 20, 2001). This Court hereby takes judicial notice of
    this decision. See Federal Rule of Evidence 201(b)(2) (allowing a court to take judicial notice of

22  facts "capable of accurate and ready determination by resort to sources whose accuracy cannot
    reasonably be questioned.").

23

24      [5] The Secretary took the position that the Solicitor General was currently considering whether
    to authorize an appeal of Judge Reddin's recent decision in Carter, supra n.4, in which the Court

25  held that the census data requested here was subject to disclosure under the FOIA, and that if such
    an appeal were not authorized, "the data will be released as ordered by Judge Redden." The Court

26  interprets the Secretary as arguing that based on the Carter decision, Plaintiffs would be able to
    obtain the census data under FOIA and that as such, the instant matter becomes moot. Transcript

27  of Hearing at 7. The Court disagrees with this mootness argument for the simple reason that the
    Carter decision does not resolve the scope of Section 2954, the issue implicated here.

28

- 9 -

at the Office of Legislative and Intergovernmental Affairs to no avail prior to instituting the instant suit.[6] See Exhibit A to Decl. of Michael Yeager, April 6, 2001 Letter; Exhibit B, May 16, 2001 Letter. The circumstances thus indicate that judicial intervention has become necessary to solve this inter-branch dispute.

### b.   Intra-branch dispute

The Secretary also characterizes the instant action as arising out of an intra-branch dispute within the Legislature itself and notes that in a line of cases beginning with Riegle v. Fed. Open Market Committee, 656 F. 2d 873 (D.C. Cir.), cert. denied, 454 U.S. 1082 (1981), the District of Columbia Circuit has refrained from exercising jurisdiction over litigation brought by individual members of Congress "when such disputes merely reflected extensions of legislative controversies." Secretary's Motion at 7. The Secretary concludes that

> [r]ather than invoke the authority of the full committee through a subpoena, or convince a chamber majority of their need for the information, these members ask the Court to decide that Section 2954 grants any seven members of the committee carte blanche with respect to any and all information within its jurisdiction . . . . Separation of powers concerns dictate that plaintiffs first seek to convince their majority colleagues of their need for the adjusted Census figures they seek before requesting a ruling of first impression from the Court.

Id. at 8-9. The Secretary, however, overreads the reach of the

---

[6] Though the June 5, 2001 letter sent by the Secretary in response to Plaintiffs' request appears to be show room for compromise, see Exhibit C to Decl. of Yeager ("We are mindful of your stated needs for the adjusted data, however, and we are continuing to consider whether release of the data is warranted. The Department expects to make a final decision in the near future. We will, in any case, continue to work with the Committee on Government Reform . . . to provide the information needed to fulfill Congress' oversight responsibilities."), the oral argument, as mentioned above, clearly indicated that both the Secretary and Plaintiffs believed further negotiation to be an exercise in futility.

- 10 -

1  Riegle, 656 F.2d at 873, line of case law. In Riegle, 656 F.2d at

2  881, the District of Columbia Circuit created a "doctrine of

3  circumscribed equitable discretion" and held that "[w]here a

4  congressional plaintiff could obtain substantial relief from his

5  fellow legislators through the enactment, repeal, or amendment of

6  a statute, this court should exercise its equitable discretion to

7  dismiss the legislator's action." Significantly, the Riegle, 656

8  F.2d at 881, court emphasized that this standard would "counsel the

9  courts to refrain from hearing cases which represent the most

10 obvious intrusion by the judiciary into the legislative arena:

11 challenges concerning congressional action or inaction regarding

12 legislation." Thus, in Riegle, 656 F.2d at 882, the court dismissed

13 a senator's suit challenging the constitutionality of the Federal

14 Reserve Act and seeking injunctive relief in the form of absolute

15 prohibition on voting by reserve bank members of the Federal Open

16 Market Committee in light of the fact that a bill which would have

17 accomplished the senator's objective had been introduced in

18 Congress one year earlier but had not passed. The court noted that

19 the senator's attempt to prohibit voting by the five Reserve Bank

20 members "[was] yet another skirmish in the war over public versus

21 private control of the Committee which has been waged in the

22 legislative arena since 1933." Id. Under these circumstances, the

23 court's adjudication of the suit raised the possibility of

24 "thwarting Congress's will by allowing [] plaintiff to circumvent

25 the processes of democratic decisionmaking. This meddling with the

26 internal decisionmaking processes of one of the political branches

27 extends judicial power beyond the limits inherent in the

28

constitutional scheme for dividing federal power." _Id._ at 881.

The cases following _Riegle_, 656 F.2d at 873, in which the District of Columbia court applied the equitable discretion doctrine involved similar situations where congressional plaintiffs either challenged the constitutionality of legislation or of actions in light of legislation, _see, e.g._, _Lowry v. Reagan_, 676 F. Supp. 333 (D.C. Cir. 1987) (the War Powers Resolution); _Melcher v. Federal Open Market Committee_, 836 F.2d 561 (D.C. Cir. 1987) (the Appointments Clause); _Barnes v. Kline_, 759 F.2d 21 (D.C. Cir. 1985) (the Presentment Clause); _Moore et al. v. United States House of Representatives_, 733 F.2d 946 (D.C. Cir. 1984), _cert. denied_, 105 S. Ct. 779 (1985) (the Tax Equity and Fiscal Responsibility Act); _Crockett, Jr. v. Reagan_, 720 F.2d 1355 (D.C. Cir. 1983) (the Foreign Assistance Act), or otherwise implicated situations where internal congressional procedures were specifically challenged. _See, e.g._, _Vander Jagt et al. v. O'Neill, Jr._, 699 F.2d 1166 (D.C. Cir. 1983) (congressional rules in apportioning seats on House committees and subcommittees); _Gregg et al. v. Barrett_, 771 F.2d 539 (D.C. Cir. 1985) (preparation of Congressional Record). In those instances, the courts held that the rights asserted by plaintiffs could be vindicated by congressional repeal of the statute and/or that plaintiffs' disputes were clearly with their fellow legislators.

Here, in contrast, Plaintiffs' rights cannot be vindicated by congressional repeal of a statute; rather, their rights may actually be vindicated by the effectuation of a statute. This effectuation, however, can only come from this Court's adjudication

of the merits of the dispute. In addition, it is clear that
Plaintiffs' dispute is solely with the Secretary rather than with
their fellow legislators. For this reason, the Secretary's reliance
upon Leach v. Resolution Trust Corp., 860 F. Supp. 868, 874 (D.C.
Cir. 1994) ("The strident controversy in the House surrounding the
debate over the appropriate format and timetable for hearings
pertaining to [the Madison Savings & Loan Association] gave rise to
Representative Leach's filing of the instant complaint."), is
misplaced. In fact, though in dicta, the Leach, 860 F. Supp. at 876
n.7, court contemplated Section 2954 as a viable means by which
"small groups of individual congressmembers can request information
without awaiting formal Committee action."[7]

The Secretary's equitable discretion position actually
highlights the need for this Court to reach the merits of the
instant dispute because such a position is ultimately based on the
Secretary's interpretation of Section 2954. For if Plaintiffs'
interpretation of Section 2954 is indeed correct, that provision
would specifically contemplate the situation where Plaintiffs need
not convince a majority of their colleagues of the need for the

_____

[7] The full text of the Leach, 860 F. Supp. at 876, court's discussion of Section 2954 is as
follows:

> Moreover to the extent that Representative Leach seeks to suggest that the alleged
> domination of the Committee by members of an opposing political party makes such a
> collegial remedy an impossibility, the Defendants note that the House has in fact provided
> alternative procedures through which small groups can request information without awaiting
> formal Committee action. See 5 U.S.C. § 2954 ("An Executive agency, on request of the
> Committee on Government Operations of the House of Representatives, or of any seven
> members thereof... shall submit any information requested of it relating to any matter within
> the jurisdiction of the committee.").

Id. at 876 n.7.

1  adjusted census figures sought here. In that respect, this Court's
2  refusal to adjudicate the merits would constitute "meddling with
3  the internal decisionmaking processes of one of the political
4  branches" by nullifying congressional intent to empower Plaintiffs
5  here to obtain the census data sought without having to invoke the
6  authority of the full committee through a subpoena or convincing a
7  chamber majority of the need for the information. Riegle, 656 F.2d
8  at 881. The Court consequently finds dismissal to be unwarranted
9  and therefore DENIES the Secretary's motion to dismiss. The Court
10  thus proceeds to the adjudication of the merits of the instant
11  dispute and the cross-motions for summary judgment.

12        2.   The plain language of Section 2954

13        The Court begins, as it must, with the statutory
14  language. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-
15  54 (1992) (noting that the statutory language is the "cardinal
16  canon" to be addressed "before all others"); Jeffries v. Wood, 114
17  F.3d 1484, 1495 (9th Cir.) (en banc) ("In statutory interpretation,
18  the starting point is always the language of the statute itself."),
19  cert. denied, 522 U.S. 1008 (1997). The Secretary does not dispute
20  Plaintiffs' contention that the plain language of Section 2954
21  appears to compel him to submit the information requested. Pl's
22  Motion at 6; Secretary's Motion at 9. Nor does it appear that
23  Plaintiff's position could be disputed. Section 2954 of Title 5, as
24  previously noted, provides that upon receiving a request by seven
25  members of the Committee, an executive agency "shall" submit "any"
26  information requested of it relating to "any" matter within the
27  jurisdiction of the committee. See 5 U.S.C. § 2954. The term
28  "shall" is generally imperative or mandatory and "in ordinary usage

- 14 -

means 'must' and is inconsistent with a concept of discretion." Black's Law Dictionary (6th ed. 1990); see Lopez v. Davis, 531 U.S. 230, 231 (2001) (discussing "Congress'[s] use of a mandatory 'shall' . . . to impose discretionless obligations"); Leslie Salt Co. v. United States, 55 F.3d 1388, 1397 (9th Cir. 1995) (noting that "as a matter of statutory interpretation, a longstanding canon holds that the word 'shall' standing by itself is a word of command rather than guidance"). In addition, though the dictionary term of "any" is more ambiguous, see Black Law's Dictionary (6th ed. 1990) (recognizing that the term has a "diversity of meaning and may be employed to indicate 'all' or 'every' as well as 'some' or 'one'"), the Supreme Court has stated that read "naturally," the term "any" means "all." See, e.g., United States v. Gonzalez, 520 U.S. 1, 5 (finding the phrase "any other term of imprisonment" to refer to "all term[s] of imprisonment").

Reading the terms of Section 2954 in their ordinary and common meanings as this Court must, see Foxgord v. Hischemoeller, 820 F.2d 1030, 1032 (9th Cir. 1987) ("It is a maxim of statutory construction that unless otherwise defined, words should be given their ordinary, common meaning."), the Court finds that the "Seven Member Rule" requires an executive agency to submit all information requested of it by the Committee relating to all matters within the Committee's jurisdiction upon the Committee's request. Here, there is no dispute that the adjusted census data requested by Plaintiffs is within the Committee's jurisdiction. Consequently, the plain language of Section 2954 mandates that the Secretary release the requested data to Plaintiffs.

### 3. The legislative history of Section 2954

The Secretary, however, argues that this Court cannot be "shackled" to the language of Section 2954 but rather must read the seemingly broad statutory text within the context of its legislative history. Secretary's Motion at 9. Plaintiffs, on the other hand, argue that in light of the absence of textual ambiguity here, resort to legislative history is both unnecessary and inappropriate. Pl's Reply at 6-10. The Supreme Court has stated that if no ambiguity in the plain statutory language is discerned, as in the instant situation, legislative history need not be consulted. Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 808-09 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."); see also In re Catapult Entertainment, Inc., 165 F.3d 747, 753 (9th Cir. 1999) (noting Supreme Court precedent on issue). "Courts will depart from this rule, if at all, only where the legislative history clearly indicates that Congress meant something other than what it said." City of Auburn v. United States, 154 F.3d 1025, 1029 (9th Cir. 1997). Though this Court has already concluded that the text of Section 2954 is unambiguous, it will nevertheless review the provision's legislative history out of an abundance of caution. Catapult, 165 F.3d at 753-54.

The "Seven Member Rule" derives from Section 2 of the Act of May 29, 1928, 45 Stat. 996 § 2. The first section of that act repealed certain statutes requiring the submission of reports to Congress by public officials. The Bureau of Efficiency considered these reports to be obsolete and/or useless, either because the information contained in the reports was already being submitted to

1 other agencies or because the usefulness of the information was

2 being "materially lessened" by the size of the statements required

3 by the statutes. Exhibit A to Decl. of Zick in Support of

4 Secretary's Motion, S. Rep. No. 1320 at 1-4; H.R. Rep. No. 1757 at

5 2-6. In referring to the second section of the Act of 1928, both

6 the Senate Report and the House Report state that

7       [t]o save any question as to the right of the House of
        Representatives to have furnished any of the information
8       contained in the reports proposed to be abolished, a provision
        has been added to the bill requiring such information to be
9       furnished to the Committee on Expenditures in the Executive
        Departments or upon the request of any seven members thereof.
10

11 Exhibit A to Decl. of Zick in Support of Secretary's Motion, S.

12 Rep. No. 1320 at 4; H.R. Rep. No. 1757 at 6. Thus, the legislative

13 history shows that Congress understood Section 2 of the act to

14 preserve legislators' access to the information formerly contained

15 in the discontinued reports, thus supporting the Secretary's

16 parochial reading of Section 2954.

17     Both the Senate and House Reports, however, also contain the

18 following passage in their "Conclusions" section:

19      The committee also desires to make the observation that it is
        easy in the enactment of general legislation on some subject
20      for some one to suggest that a special report be made to
        Congress. Little attention is given to the character of report
21      that should be submitted, and the legislation goes in the
        statute books. The department makes the character of report
22      that it thinks will fit the legal requirement, and often it is
        entirely valueless for the purpose intended. The reports come
23      in, they are not valuable enough to be printed, they are
        referred to committee, and that is the end of the matter. The
24      departmental labor in preparation is a waste of time and the
        files of Congress are cluttered up with a mass of useless
25      reports. If any information is desired by any Member or
        committee upon a particular subject, that information can be
26      better secured by a request made by an individual Member or
        committee, so framed as to bring out the special information
27      desired. It would be helpful if in the future, committees
        would be more careful as to the character and extent of
28      requiring that reports be made to Congress in connection with
        the administration of legislation.

Exhibit A to Decl. of Zick in Support of Secretary's Motion, S. Rep. No. 1320 at 4; H.R. Rep. No. 1757 at 6. Pointing to this passage, Plaintiffs conclude that "the House and Senate Reports evidence a clear preference for having legislators and committees make specific individual requests for information rather than compelling the standardized production of 'useless reports.'" Pl's Motion at 12. Plaintiffs argue that Section 2954 constituted a "quid pro quo" by which members of Congress could continue to possess oversight over agencies in exchange for repealing statutes requiring the submission of specific annual reports. Transcripts of Hearing at 17.

Based on the foregoing, the Court concludes that "far from clarifying the statute, the legislative history only muddies the waters." Gonzalez, 520 U.S. at 6. For though it is clear that Section 2954 "makes it possible to require any report discontinued by the language of [the Act of 1928] to be resubmitted to either House upon its necessity becoming evident to the membership of either body," S. R. No. 1320 at 4, such a recognition does not necessarily mean that the provision was designed to merely accomplish that narrow aim. In light of the fact that the purposes and policies of Section 2954 are not clearly expressed by the legislative history, this Court follows the text rather than the legislative history. Gonzalez, 520 U.S. at 8 (quoting United States v. Wiltberger, 5 Wheat. 76, 95-96 (1820) (noting that "[w]here there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not

")). Because the statute speaks clearly and its plain

_e does not contravene any clear legislative history, this

must hold Congress to its words." <u>Catapult</u>, 165 F.3d at 754

_ _tion omitted).[8]

### 4.   Serious constitutional doubts

Finally, the Secretary argues that Plaintiffs'

interpretation of Section 2954 raises serious constitutional doubts

8  because such an interpretation "requires submission <u>on demand</u> by

9  the Secretary of any information in the agency's files on the

10  request of only seven members of the House Committee on Government

11  Reform." Secretary's Motion at 17-18 (emphasis in original). He

12  concludes that two substantial questions are raised which require

13  rejection of Plaintiffs' interpretation. <u>Id.</u> at 18.

14      First, the Secretary states that Plaintiffs' interpretation

15  "admits of not a single exception to disclosure" so that "an agency

16  in possession of material deemed sensitive for national security or

17  other reasons, or which is otherwise protected by Executive

18  privilege, would have no choice, in Plaintiffs' view, but to make

19  the requested disclosure." <u>Id.</u> This, however, misstates Plaintiffs'

20  position for they respond that "nowhere have [they] or anyone else

21  ever suggested that a statute trumps the Constitution. We recognize

22  the settled rule that a valid constitutional claim of Executive

23  Privilege can defeat a congressional demand for information,

24

25  [8] The Secretary also points to the "congressional design" of Section 2954 as support for the "limited nature" of the provision. Secretary's Motion at 10. Specifically, he notes that Section 2954

26  is part of a subchapter entitled "Reports." <u>Id.</u> The Supreme Court, however, has cautioned against using titles of statutes and headings of a section to limit the plain meaning of the text. <u>See</u>

27  <u>Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.</u>, 331 U.S. 519, 528-29 (1947). Moreover, the Court finds some merit in Plaintiffs' assertion that "[i]f titles are used by the Court as an

28  interpretative guide, then surely more directly relevant is the title of § 2954 itself, which is: "§ 2954, Information to committees of Congress on request." Pl's Motion at 9.

;s of whether the demand is made by subpoena or under a

Pl's Reply at 11. In <u>Soucie v. David, Jr.</u>. 448 F.2d 1067,

9 (D.C. Cir. 1971), the District of Columbia Circuit

reco... ..zed that Congress has frequently exercised the power to

compel disclosure to itself in statutes requiring executive

officers to transmit information to Congress and specifically cited

to Section 2954. Importantly, it also noted that "the doctrine of

executive privilege is to some degree inherent in the

9   constitutional requirement of separation of powers," <u>id.</u> at 1072,

10  and stated that if an act seems to require disclosure and if the

11  government makes an express claim of executive privilege, it would

12  become necessary for a court to consider whether the disclosure

13  provisions of the act exceeds the constitutional power of Congress

14  to control the actions of the executive branch. <u>Id.</u>

15      Second, the Secretary argues that Plaintiffs' interpretation

16  is "all the more unusual, and constitutionally suspect, because

17  this absolute power is proposed to be lodged not in any committee,

18  or subcommittee, but in a mere fraction of the membership of only

19  two of Congress's more than 40 full committees." Secretary's Motion

20  at 19. "Odder still, [Plaintiffs] do not explain why Congress would

21  vest such powers in a small number of minority members of the

22  committee." <u>Id.</u> However, as the <u>Leach</u>, 860 F. Supp. at 876 n.7,

23  court surmised, Section 2954 might have been contemplated by

24  Congress as an antidote to possible domination of the legislative

25  body by members of an opposing political party. Moreover, as

26  Plaintiffs point out, the Secretary's own evidence submitted in

27  support of his motion for summary judgment shows that "many

28  committees and subcommittees have given a single member of

- 20 -

;—the committee chair—unilateral power to determine when to

subpoena." Pl's Reply at 13; Exhibit C to Decl. of Zick in

of Secretary's Motion at 19 ("The rules or practices of

ing committees may restrict the issuance of subpoenas only to

committees or in certain instances allow issuance by a

committee chairman alone, with or without the concurrence of the

ranking minority member.").

8   In conclusion, the Court finds that interpreting Section 2954

9   according to its plain language does not raise serious

10  constitutional doubts nor does it otherwise produce a "patently

11  absurd result." <u>Catapult</u>, 165 F.3d at 754.

12  **IV. CONCLUSION**

13  Based on the foregoing analysis, the Court hereby DENIES

14  Defendant's motion to dismiss or, in the alternative, for summary

15  judgment. Because the facts are undisputed, there are no genuine

16  issues of dispute to preclude a grant of Plaintiffs' request for

17  summary judgment. Moreover, because the foregoing analysis shows

18  that Plaintiffs are entitled to judgment as a matter of law, the

19  Court hereby GRANTS Plaintiffs' motion for summary judgment. The

20  Secretary is thus ORDERED to release the requested census data to

21  Plaintiffs.

22

23

24  **IT IS SO ORDERED.**

25

26  Dated: *January 18, 2002*

27

28  **LOURDES G. BAIRD**
    **United States District Judge**

- 21 -