

United States District Court
Southern District of Texas
FILED

FEB 1 2 2003

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CAMERON COUNTY, TEXAS et al., | § | |
| Plainintiffs, | § | |
| | § | |
| v. | § | Case No. B-01-082 |
| | § | |
| DONALD EVANS, Secretary of the | § | |
| Department of Commerce, et al., | § | |
| Defendants | § | |

## MOTION AND MEMORANDUM ON APPLICATION FOR ATTORNEY FEES AND COSTS

### I.   INTRODUCTION

This action involves Plaintiffs' efforts under the Freedom of Information Act ("FOIA," 5 U.S.C. § 552) to obtain key statistical data developed by Defendant relating to the 2000 national census.   After almost two years of administrative wrangling and litigation, Plaintiffs finally secured production of the requested data.   Having "substantially prevailed" in this action, Plaintiffs now seek an award of reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).   The issues presented to the Court for its consideration are (1) whether Plaintiffs are eligible for attorneys' fees and costs; (2) whether Plaintiffs are entitled to attorneys' fees and costs; and (3) what amount of attorneys' fees and costs is reasonable and appropriate under the facts and circumstances of this case.

### II.   STATEMENT OF RELEVANT FACTS

Plaintiffs are Cameron and Hidalgo Counties, the respective County Judges as individuals and thirty seven (37) cities within the respective counties who filed a FOIA request seeking certain adjusted census data that Defendant had declined to release as part of the "official" 2000 census results.   *See* Statement of Sec'y Donald L. Evans, 66 Fed. Reg. 14520 (March 13, 2001).

1

Plaintiffs sought these adjusted data because of their concern about the historic undercount of minority and low-income communities in previous census efforts. This undercount often leads to uneven distribution of government resources and other related inequities because decisions like, for example, funding and redistricting, are premised upon the "official" census results released by Defendant. In 1999, the General Accounting Office found that, as a direct consequence of the 1990 census undercount, states and localities with the greatest undercount failed to receive approximately $449 million from fifteen federal programs. *See* United States General Accounting Office, *Formula Grants: Effects of Adjusted Population Counts on Federal Funding to States*, GAO/HEHS-99-69, at 2-3 (Feb. 1999).

The adjusted census data sought by Plaintiffs, which essentially are by-products of Defendant's efforts to accurately count communities impacted by the undercount, have the potential to assist government officials (including Plaintiffs) in determining the proper allocation of federal, state, and local resources and to influence decision-making at all levels of government. There is also considerable scholarly interest in the adjusted census data, spread across various academic disciplines from statistics to sociology. Accordingly, Plaintiffs' ultimate goal in pursuing this litigation was not only to obtain the adjusted census data for use in their capacity as local governments, but also to provide the data to both local and national research institutions and, ultimately, to the general public.

Unfortunately, Plaintiffs' initial FOIA request fell on deaf ears. Defendant, hiding behind a narrow FOIA exemption (the "deliberative process" privilege), refused to produce any of the requested data. *See* Letter from Gerald W. Gates to Rolando L. Rios (7/16/01) (**Att. A**). After exhausting administrative remedies, Plaintiffs filed the instant lawsuit. On January 30, 2002, this Court granted Plaintiffs' Motion for Summary Judgment, ordering Defendant to

2

produce all of the disputed data.  Defendant appealed.  After loosing a similar appeal in the 9th

Circuit, the Defendants, on December 20, 2002, decided to drop their appeal of this Courts FOIA

decision.  Defendant agreed to and the Court ordered that the Plaintiffs shall have until February

12, 2003 to seek fees and costs.  Plaintiffs now return to this Court seeking an award of

reasonable attorneys' fees and costs, as allowed under FOIA.  *See* 5 U.S.C. § 552(a)(4)(E).

### III.    ARGUMENT AND CITATION OF AUTHORITY

The statutory basis for Plaintiffs' Motion is found in FOIA's "fee-shifting" provision,

which states, in pertinent part:

> The court may assess against the United States reasonable attorney fees and other
> litigation costs reasonably incurred in any case under this section in which the
> complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E).  To be entitled to such an award, a litigant must first establish eligibility

by showing that the lawsuit was reasonably necessary and the litigation substantially caused the

requested records to be released. *See Chesapeake Bay Foundation, Inc. v. United States Dep't of*

*Agriculture,* 11 F.3d 211, 215-16 (D.C. Cir. 1993), *cert. denied,* 513 U.S. 927 (1994). Second, a

litigant must show that it is entitled to fees under four criteria that the court weighs in

determining whether attorney's fees are appropriate: "(1) the public benefit derived from the

case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the

records; and (4) whether the Government had a reasonable basis for withholding requested

information." 11 F.3d at 216 (citations omitted).

**A.    Plaintiffs have "substantially prevailed" in this lawsuit, making them eligible
for an award of reasonable attorneys' fees and costs under FOIA.**

There is no question that Plaintiffs have "substantially prevailed" in their FOIA action.

The instant case does not require a detailed factual analysis of these threshold requirements; rather, it is abundantly clear from the procedural history of this action that Plaintiffs satisfy both fee eligibility requirements.  This lawsuit was necessary to obtain the requested information because Defendant categorically refused to produce any of the requested data from the very beginning.  After exhausting their administrative remedies, Plaintiffs had no choice but to pursue legal action.  Plaintiffs sought and obtained summary judgment on all disputed FOIA claim issues in this Court, which ordered production of the requested data.  Accordingly, Plaintiffs have "substantially prevailed" under FOIA and are eligible for an award of attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

**B.    Plaintiffs are entitled to an award of attorneys' fees and costs under FOIA and applicable case law.**

Even where a FOIA plaintiff "substantially prevails," the court still must determine whether the plaintiff is entitled to receive a fee award. *Long*, 932 F.2d at 1313.  To make this determination, courts employ the four-factor test outlined in the Senate version of the 1974 FOIA Amendments.  As articulated by the Ninth Circuit, the four factors are: (1) the public benefit from disclosure; (2) any commercial benefit to the plaintiff resulting from disclosure; (3) the nature of the plaintiff's interest in the disclosed records; and (4) whether the government's withholding of the records had a reasonable basis in law.  *United Ass'n of Journeymen & Apprentices, Plumbing & Pipefitting Indus., Local 598 v. Department of the Army*, 841 F.2d 1459, 1461 (9th Cir. 1988); *see also Long,* 932 F.2d at 1313; *Church of Scientology*, 700 F.2d at 492.  While these criteria are not necessarily exhaustive or dispositive, they provide a baseline for this Court's consideration of Plaintiffs' Motion. *See Exner*, 443 F.Supp. at 1352 (noting that courts may consider additional factors in their discretion).

1.    Public Benefit From Disclosure

This criterion "speaks for an award [of attorneys' fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Klamath Water Users Protective Ass'n v. United States Dep't of Interior*, 18 Fed.Appx. 473, 475 (9th Cir. 2001) (unpublished opinion) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir.1979)); *see also Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1094-96 (affirming the public benefit of information obtained under FOIA and disseminated to subscribers of a for-profit tax journal).    Courts also take into account "the degree of dissemination and the likely public impact that might result from disclosure." *Church of Scientology*, 700 F.2d at 493 (discussing *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978)).  In addition, a FOIA plaintiff's ability to obtain a ruling that the government "may not withhold certain information pursuant to a particular FOIA exemption" may constitute a public benefit in and of itself. *Id.* at 493 (citing *Exner*, 443 F.Supp. at 1353).

The impact that likely will result from widespread dissemination of the adjusted census data is significant and far-reaching.  Governmental agencies, businesses, and private citizen groups rely on census data for critical purposes, including allocation of funds and other resources.  Therefore, release of the adjusted census data will aid representatives of these entities in making vital choices concerning the development of priorities and the distribution of resources.

Plaintiffs' success in this lawsuit also benefits the public simply by vindicating the purposes of FOIA and discouraging the government from using the "deliberative process" exemption unreasonably to restrict access to agency documents in the future.  Indeed, the very purpose of FOIA's attorney fee provision is to allow potential plaintiffs to overcome "the

insurmountable barriers presented by court costs and attorney fees [which enable] the government to escape compliance with the law." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363-64 (D.C. Cir. 1977). As reasonable compensation for enforcing FOIA's strict disclosure provisions and providing the public with useful information that otherwise would not be available, Plaintiffs are entitled to an award of attorneys' fees and costs.

## 2. Commercial Benefit to Plaintiffs and Nature of Plaintiffs' Interest

Where a FOIA plaintiff stands to benefit personally from release of the information at issue or seeks to vindicate a purely private or self-serving interest, the plaintiff generally is not entitled to a fee award. *See Church of Scientology*, 700 F.2d at 494 (discussing *Werner-Continental, Inc. v. Farkas*, 478 F.Supp. 815, 817 (S.D.Ohio 1979), *aff'd*, 661 F.2d 935 (6th Cir. 1981)). If, on the other hand, the plaintiff will not derive commercial benefit from disclosure and seeks to vindicate a public or academic interest, an award of attorneys' fees and costs is appropriate. *Id.*; *see also Local 598*, 841 F.2d at 1461-62 (noting that lack of commercial benefit "would weigh in favor of a fee award").

Plaintiffs have not sought, nor have they derived, any commercial or personal benefit from this litigation. Plaintiffs are jurisdictions with large minority communities who sought the adjusted census data because of their concern about the historic undercount of minority populations in previous census efforts and the impact of this undercount (and associated redistricting and funding decisions) on residents of minority and low-income communities. Any commercial benefit derived from this litigation will accrue to residents of these communities.

Plaintiffs' interest in the adjusted census data is not private or self-serving; rather, Plaintiffs' interest is in better serving their constituents (and the general public) by ensuring

informed government decision-making  While the data may well be  used by Texas legislators, the data has already been made available to the general public.   Indeed, it is only through public dissemination and debate that the true significance of the data will be realized.

3.      Defendant's Basis for Withholding Information

Defendant had no reasonable basis in law for withholding the adjusted census data in this case.  Defendant's position that the data fell within the "deliberative process" exemption from FOIA directly contradicted established ten year old court precedent.  In *Assembly of the State of California v. United States Department of Commerce*, 968 F.2d 916 (9th Cir. 1992), the Ninth Circuit held that substantially similar data compiled during the 1990 census was not subject to the "deliberative process" exemption.  In light of FOIA's intent to encourage the fullest possible disclosure of government information, construing the enumerated exemptions narrowly, this Court should hold Defendant responsible for its unreasonable error in legal judgment and issue an award of reasonable attorneys' fees and costs to Plaintiffs.  *See Local 598*, 841 F.2d at 1462-63 (stating that "courts should always keep in mind the basic policy of the FOIA to encourage the maximum public access to government information.")

**C.      The amount of attorneys' fees and costs sought by Plaintiffs is reasonable.**

Once a FOIA Plaintiff has proven both eligibility for and entitlement to attorneys' fees and costs, the only remaining issue is the amount of the award.  Any fee award must be based upon sound evidence submitted by the moving party, and courts have an independent duty to review the reasonableness of each fee petition.  *See Long,* 932 F.2d at 1313-14; *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993).

The traditional starting point for calculating a fee award is known as the "lodestar,"

7

which equals the number of hours reasonably expended multiplied by the billing attorney's reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Long*, 932 F.2d at 1313-14. Reasonable hourly rates are determined by the fair market value of the attorney's services in the locality where the attorney practices. *See, e.g., O'Neill, Lysaght & Son v. Drug Enforcement Administration*, 951 F.Supp. 1413, 1426 (C.D.Ca. 1996) (holding that plaintiff law firm was entitled to prevailing market rates in its locality); *see also Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (similar result).

Plaintiffs' lead counsel in this matter are located in San Antonio and McAllen. Counsel have extensive experience in federal civil rights litigation and have been awarded fees in numerous cases as stated in their filed affidavits.

With regard to the number of billable hours invested in this case, Plaintiffs' counsel have prepared and attached a detailed billing statement for the Court's review. *See* Attached Declarations. This statement reflects Plaintiffs' good faith effort to eliminate any charges resulting from unnecessary or duplicative time entries. *See* Rios and Garza Declaration. Hours spent on appeal are included in the summary:

|  | Hrs. | Rate | Total |
|---|---|---|---|
| Rolando L. Rios: | 528.7 X | $325 | = $171,827.50 |
| Melissa Castro: | 62.2 X | $150 | = $ 9,330.00 |
| Jose Garza: | 164.25 X | $325 | = $53,381.25 |

As set forth in detail in the attached billing statement, applying the hourly rates contained to the total amount of billable hours produces a total fee request of $234538.75.

Under FOIA, Plaintiffs are also entitled to recover reasonable costs of litigation. *See* 5

U.S.C. 552 §(a)(4)(E).   Plaintiffs' litigation costs are also outlined in the attached billing summary.   *See* Rios Declaration.   Again, a good faith effort has been made to streamline the expense summary and to deduct any items that, in retrospect, appear unnecessary or duplicative. The total amount of litigation costs sought by Plaintiffs is: Rios Firm = $ 10,562.85, Garza Firm = $1,627.88.   Plaintiffs request that this amount be added to the amount of attorneys' fees awarded by the Court.

## IV.   CONCLUSION

For the reasons set forth above, this Court should award Plaintiffs attorneys' fees in the amount of $234,538.75 and litigation costs in the amount of $12,190.73, for a total award of $246,729.48.

DATED this 12th day of February, 2003.

Respectfully submitted,

ROLANDO L. RIOS
SBN 16935900
FBN: 14370
GEORGE KORBEL

LAW OFFICES OF ROLANDO L. RIOS
MILAM BUILDING
115 E. Travis, Suite 1024
San Antonio, Texas 78205
Ph   (210) 222-2102
Fax (210) 222-2898
rrios@rolandorioslaw.com


JOSE GARZA
SBN: 07731950
FBN: 1959
1913 Fordham
McAllen, Texas 78504
Ph (956) 928-0088
garzpalm@aol.com

ATTORNEYS FOR PLAINTIFFS

C. DOUGLAS WRIGHT
SBN: 22024100
RICHARD O. BURST
SBN: 00785586
>Legal Division Commissioners Court
>Cameron County Courthouse
>964 E. Harrison Street
>Brownsville, Texas 78520
>Ph  (956) 550-1345
>Fax (956) 550-1345
>igonzalez@co.cameron.tx.us
>LOCAL COUNSEL FOR CAMERON
>COUNTY

>GARY GURWITZ
>SBN: 08631000
>ADRIANA CARDENAS
>SBN: 24001836
>ATLAS & HALL, L.L.P.
>P.O. Box 3725
>McAllen, Texas 78502
>Ph  (956) 682-6109
>Fax (956) 686-6109
>ahc@atlashall.com
>OF COUNSEL FOR HIDALGO COUNTY

>JAMES E. DARLING
>SBN: 05386000
>McAllen City Attorney
>P.O. Box 220
>McAllen, Texas 78505
>Ph  (956) 972-7000
>Fax (956) 972-7138
>jdarling@mcanet.net
>OF COUNSEL FOR THE CITY OF
>MCALLEN

## CERTIFICATE OF CONFERENCE

This to certify that counsel for movant continues to confer with counsel for defendants regarding Plaintiffs' Motion for Fees and Costs and inform the court that the issue of fees and costs has not been resolved.

Rolando L. Rios
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Plaintiffs' Motion and Memorandum for Attorney Fees and Costs and the accompanying affidavits have been sent by First Class Mail on this the 12th.   day of February, 2003 to:

Mr. Thomas Millet, Esq.
Federal Programs Branch
United Stated Department of Justice
901 E. St. N.W.
Washington, D.C. 20530

By: _____
ROLANDO L. RIOS, ESQ.
ATTORNEY FOR THE
PLAINTIFFS

11

ATTACHMENT NO. 1



UNITED STATES DEPARTMENT OF COMMERCE
Economics and Statistics Administration
U.S. Census Bureau
Washington, DC 20233-0001
OFFICE OF THE DIRECTOR

01/200

**JUL 1 6 2001**

Mr. Rolando L. Rios, Esquire
Law Offices of Rolando L. Rios
Milam Building
115 E. Travis, Suite 1024
San Antonio, TX 78205

Dear Mr. Rios:

This is in response to your Freedom of Information Act (FOIA) request of June 27, 2001, for
". . . the statistically adjusted population figures (data adjusted for undercount) for the
2000 Census for . . ." specified Texas jurisdictions. We received your facsimile in this office on
June 27, 2001.

The data you are requesting are related to an intradepartmental recommendation concurred with
by the Secretary that unadjusted data be released as the U.S. Census Bureau's official
redistricting data. The Census Bureau reached its recommendation because it was unable, based
on the data and other information it had at the time, to conclude that the adjusted data were more
accurate for use in redistricting. As such, the data you request are predecisional and deliberative
in nature. Thus, the data are protected from disclosure by the deliberative process privilege of
Exemption 5 of the FOIA, Title 5, United States Code, Section 552(b) (5). Accordingly, we
must deny your request for these data.

You have the right to appeal within thirty days of the date of this letter. If you wish to appeal,
address your appeal to the Assistant General Counsel for Administration, U.S. Department of
Commerce, Room 5883, Attn: Freedom of Information Appeal, Washington, DC 20230. The
appeal should include a copy of the original request, this initial determination, and a statement of
the reason(s) why this determination was in error.

Sincerely,

Gerald W. Gates
Chief, Policy Office

U S C E N S U S B U R E A U

www.census.gov

ATTACHMENT NO. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CAMERON COUNTY, TEXAS et al., | § | |
| Planintiffs, | § | |
| | § | |
| v. | § | Case No. B-01-082 |
| | § | |
| DONALD EVANS, Secretary of the | § | |
| Department of Commerce, et al., | § | |
| Defendants | § | |

## DECLARATION OF ROLANDO L. RIOS

**1. Introduction.**

I represented Plaintiffs, Cameron County, et.al. in the above-styled matter.  I am presenting this declaration in support of Plaintiffs' Motion for Attorney's Fees and Costs.

**2.     Time**

The time I and my staff spent on this case is kept contemporaneously with the work performed and recorded on a daily basis.   For the time period from March 2001 through February 2003, I devoted a total of 532 hours in preparation and prosecution of this action.  Time records, which reflect the time I spent on this action, are attached hereto. (Attachment 1)

There was no unnecessary duplication of efforts.  My co-counsels on this case, Mr Jose Garza and Ms. Melissa Castro carefully coordinated our efforts so as to avoid unnecessary duplication.  The amount of time expended in this case was necessary because it presented several difficult questions of law and an election that was ongoing using an illegal election ballot.  Indeed, much of the time spent on this case was spent on successfully convincing the defendants that the adjusted census should be released.  The time spent on this case represent the minimum hours necessary for an adequate preparation of pleadings and the successful prosecution of a case of this type at the district and appellate court

level. Because of my twenty years of experience in Civil Rights cases, I did not spend any unnecessary time on issues and evidence developed in this case, and I did not spend time on matters that were not relevant to the prosecution of this action. There were some other issues besides the FOIA claim that were asserted in this case as part of the overall effort to obtain the adjusted census data; however, the time expended on different issues can be distinguished to some extent.

The time I spent preparing for this case was used for successfully obtaining the injunctive relief and a release of the census data for the clients and the general public.

## 3. Market Rate

The prevailing rate for work of this type, given my years of experience, range from $225 to $350 per hour; indeed the State of Texas recently stipulated that the prevailing market rate for my services in voting rights work is $325 per hour.

## 4. Lodestar

In determining the Lodestar, a court should usually consider the actual hours devoted to the case and the market hourly rate for the lawyer in question. I have devoted 532 hours to the successful prosecution of this cause. The prevailing market rate for me in this case should be $325.00 per hour. Therefore, the lodestar for my services is $172,900 (532 hours @ $325.00).

## 5. *Johnson* Factors:

The *Johnson* factors, *Johnson v. Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974), in determining the amount of attorney fees the undersigned would highlight are as follows:

*a. Preclusion  Other Employment.* My work in this litigation restricted the time available for pursuit of other litigation during the period of activity in this case. Because of the extensive work required in preparing and prosecuting this case, it was necessary for me to forego representing other potential clients. Indeed, during 2001 and 2002 extensive redistricting was being done throughout the country; redistricting is one of the areas of the law in which we specialize. Because of this ongoing litigation and the need for the adjusted census numbers other work in redistricting had to be either rejected or delayed.

*b. Time Limitation Imposed by Circumstances.* The time limitations in this case were imposed by the ongoing election schedule, the failure of the defendants to obtain pre-clearance of a legal voting ballot before the election schedule started as was done by all other counties in Texas.

*c. Undesirability of the Case.* This case was filed against the federal government which is generally considered a daunting task because of the endless resources of the federal government. I am co-counsel for the Plaintiffs, Cameron and Hidalgo Counties and other local communities. This case is very undesirable for private attorneys due to the time constraints of the case and because of the specialized nature of the actions.

*d. Experience and Expertise.* As Legal Director for the Southwest Voter Registration Education Project I prosecuted many civil rights cases directed at protecting the voting rights of the Latino Community. I have prosecuted over 200 federal voting rights cases and I also provided testimony for the United States Congress ( House and Senate) on the extension of the Federal Voting Rights Act.

Some of the related cases in which I was lead counsel were *League of United Latin American Citizens (LULAC) v. Midland Independent School District*, 648 F. Supp. 596 (W.D. Tex. 1986); *Campos v. City of Baytown*, 840 F. 2d 1240 (5th. Cir.1988); *LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993); *Houston Lawyers' Association v. Attorney General of Texas,* 115 L. Ed. 2d 379 (1991).    I have also provided advice and direction to other private attorneys in other civil rights actions such as Section 5, Voting Rights Act Enforcement Actions, and gerrymandering election challenges.    I have also lectured at civil rights conferences at law school at the University of Texas, School of Law and at St. Mary's University, School of Law, University of Houston School of Law, and the New Mexico University School of Law.  I have been awarded over $300 per hour in a vote dilution claim filed against the City of Dallas in the early 1990's.  and prevailing rates in *League of United Latin American Citizens (LULAC) v. Midland Independent School District*, 648 F. Supp. 596 (W.D. Tex. 1986); *Campos v. City of Baytown*, 840 F. 2d 1240 (5th. Cir.1988); *LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993).   These fees were over $200 per hour.

Recently, in the Texas Redistricting litigation styled as *Balderas et. al. v. State of Texas,* No. 6:01CV158 I was awarded $325 per hour for successfully defending the voting rights of the Latino Community.

***e. Contingent nature of the case:***  This case was taken on a contingency basis in that my firm was paid a reduced rate with the expectation that full payment will be contingent on the successful prosecution of the case.

It is my opinion, based on my experience, on awards made for my services

in similar cases several years ago and upon inquiring of other lawyers, that the

prevailing market rate for an attorney of over twenty years experience, trying a

case in his/her area of specialization, in a difficult and complicated civil rights

case is at lease $325.00 per hour.

### 6. Costs

The expenses claimed in this motion are actual expenses made to properly and

successfully prosecute this action.  They include expenses for necessary travel,

expert advice,  filing fees, copying, postage, and the like. The expenses incurred

through February, 2003  total $10,562.85. (Attachment 2)

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.

_Rolando L. Rios_

Rolando L. Rios

Attorney for Plaintiffs Cameron County et.al.


SWORN  TO  AND  SUBSCRIBED  before  me  appeared  and  executed  this
document ROLANDO L. RIOS on this the 12th day of February, 2003.

_Diana Amaya_
Diana Amaya
Notary Public
My commission expires: 9- 9- 010

DIANA AMAYA
MY COMMISSION EXPIRES
September 9, 2006

ATTACHMENT NO. 1

# Law Offices of Rolando L. Rios

### ATTORNEYS AT LAW
### 115 E. Travis, Suite 1024
### San Antonio, Texas 78205

## TIME RECORDS

Client: Census Litigation:
> *Cameron County et. al. V. Donald Evans et. al.*
> CA No. B-01-082

Attorneys:
RR: Rolando Rios
GK: George Korbel
MC: Melissa Castro

| Date: | Activity: | MC | RR/GK |
|---|---|---|---|
| March 29, 2001 | Conference with Cameron Staff on legal strategy and tasks to be performed; start on executive summary; research | | 6.5 |
| March 30, 2001 | prepare executive summary; legal research and pc with co-counsel | | 5.5 |
| March 31, 2001 | prepare documents for the Hidalgo County presentation | | 2.5 |
| April 5, 2001 | pc with county officials on meeting with local communities | | 2.5 |
| April 9, 2001 | Travel to Brownsville (3.0); conf with clients, Cameron County and local cities (4.5); travel to McAllen (.75) | | 8.25 |
| April 10, 2001 | conference with Hidalgo County Clients and their counsel (1.2); | | 1.2 |
| April 10, 2001 | Travel back to San Antonio (3.0) | | 3.0 |
| April 11, 2001 | phone conference with local counsel; prepare contract; prepare proposed Resolution for cities; review Passel Report on undercount | | 4.5 |
| April 11, 2001 | travel to meet with Ginsberg and confer on possible meeting with Administration officials on undercount and release of data | | 5.5 |

| | | | |
|---|---|---|---|
| April 13, 2001 | review methodology use by other cities to estimate undercount; confer with city planners | | 2.5 |
| April 16, 2001 | work on contract; work on pleadings; pc with Garza on expert; LR on prior census challenges | | 5.5 |
| April 17, 2001 | pc with Garza on commissioner court (Hidalgo) action; pc with county attorney at Cameron County ; pleadings | | 4.5 |
| April 18, 2001 | work on pleadings | | 4.8 |
| April 19, 2001 | work on pleadings | | 2.5 |
| April 20, 2001 | Review cases on use of adjusted census numbers (LR) | | 3.20 |
| April 23, 2001 | PC with Garza on pleadings and experts (.5) | | 4.5 |
| April 25, 2001 | PC with Garza and conference with Korbel on pleadings ; research | | 5.5 |
| April 26, 2001 | PC with H. Cueller on possible meeting with Governor on this issue; research for pleadings | | 5.5 |
| April 27, 2001 | Work on memo for H. Cueller; pc w/Garza on causes of action ; pleadings | | 3.75 |
| April 29, 2001 | LR on constitutional claims and work on pleadings | | 4.5 |
| May 5, 2001 | Work on complaint; pc with Garza. | | 3.5 |
| May 6, 2001 | work on complaint | | 3.5 |
| May 7, 2001 | work on complaint; e-mail to co-counsel; pc with Cameron and Hidalgo staff | | 3.5 |
| May 8, 2001 | pc with county officials on pres conference; work on complaint; travel to Mc Allen. | | 8.5 |
| May 7, 8, 2001 | work with Mr. Rios on complaint checking number and identity of plaintiffs (MC) | 6.5 | |

| | | | |
|---|---|---|---|
| May 9, 2001 | make final changed to complaint; prepare summons and civil cover sheet, review local rules; pc with local counsel | | 6.5 |
| May 10, 2001 | travel to Brownsville; file lawsuit; press conference; confer with clients; travel back to San Antonio | | 7.3 |
| May 16, 2001 | review local rules; prepare for service of process; pc with co-counsel. | | 3.8 |
| May 17, 2001 | execute service of process; start work on notice of interested parties; pc with co-counsel; review local rules | | 5.4 |
| May 19, 2001 | legal research on claim based on the Census and Administrative Procedures Act | | 4.2 |
| May 23, 2001 | Review documents received from the census bureau concerning the local update of census addresses; pc with co-counsel on meeting set for May 29; prepare for meeting | | 3.2 |
| May 24, 2001 | work on amended complaint; legal research | | 3.2 |
| May 29, 2001 | Travel to Brownsville; conference with clients (major of one of the cities and county staff) on methods used for estimating their counts; conference with co-counsel on expert preparation; travel back to San Antonio. | | 10.3 |
| May 30, 2001 | work on equal pro claim-evidentiary memo | | 4.3 |
| May 31, 2001 | work on equal pro claim-evidentiary memo (MC) | 3.3 | |
| June 4, 2001 | work on meeting with Cueller; work on equal protection claim | | 5.5 |
| June 6, 2001 | Legal research: FOIA, equal protection | | 6.5 |
| June 8, 2001 | conference with co-counsel on th meeting with Sec. Cueller; review the census program dealing with challenges to block data | | 5.5 |
| June 11, 2001 | work on drafts of discovery that is based on expert needs-document preparation | | 6.5 |
| June 12, 2001 | continue work on discover requests | | 5.5 |

| June 18, 2001 | check on service of process; amended complaint; work on tasks to be need for expert testimony; | | 4.5 |
|---|---|---|---|
| June 20, 2001 | work on tasks preparation for data need by expert | | 4.5 |
| June 22, 2001 | Conference with co-counsel; work on discovery documents; organize file | | 5.5 |
| June 23 2001 | review reports on the Utah case; research and review the Los Angeles decision; coordinate meeting with Sec. Cuellar | | 5.8 |
| June 25, 2001 | Conference with Jose Garza on experts and FOIA request; research on FOIA request; prepare request | | 7.5 |
| June 26, 2001 | Conference with Garza on coordinating the expert requests with our local staffs | | 4.5 |
| June 28, 2001 | prepare documents for Cuellar meeting; research on Goverment position on release of undercounts | | 4.5 |
| July 4, 2001 | work on meeting with Cuellar; prepare briefing papers; monitor the FOIA request | | 3.5 |
| July , 2001 | review information on census monitoring board report on Hidalgo county undercount; review methodology used and application to our case | | 2.5 |
| July 9, 2001 | prepare for meeting set for July 10 | | .8 |
| July 10, 2001 | Conference with clients; travel to Austin; conference with Sec. Cuellar; travel back to San Antonio; conference with clients on strategy | | 10.5 |
| July 11, 2001 | Prepare and coordinate meeting set for July 16 | | 1.5 |
| July 13, 2001 | conference with co-counsel on phone conference with experts set for July 16, prepare documents for meeting | | 5.8 |
| July 16, 2001 | Travel to and from Hidalgo and Cameron counties; conference with clients and experts; conference with co-counsel | | 18 |
| July 17, 2001 | research on preliminary injunction motion | | 2.2 |
| July 20, 2001 | review defendants answer and start research for response | | 5.5 |

| July 24, 2001 | conference with co-counsel on defendants answer; work on responses to motion to dismiss | | 5.5 |
|---|---|---|---|
| July 26, 2001 | LR re Defendants motion to dismiss; conference with co-counsel on response to motion for summary judgement | | 4.2 |
| July 27, 2001 | phone conference with counsel for the defendants on response to motion to dismiss and on documents attached to motion, work on motion for thirty day extension to response to the motion to dismiss | | 3.5 |
| July 30, 2001 | phone conference with court coordinator on response to defendants motions; LR on our motion | | 4.2 |
| July 31, 2001 | prepare data on addresses for the experts; finish motion for thirty day extension. | | 3.5 |
| Aug 9, 2001 | work on response to the motion to dismiss; work on affidavits | | 4.5 |
| Aug 10, 2001 | review courts order on extension of time to respond; work on response to motion dismiss | | 3.5 |
| Aug 14, 2001 | Phone conference with Sec. Cuellar's office on meeting set for Friday; work on coordinating meeting prepare documents | | 1.2 |
| Aug 15, 2001 | preparation for meeting with Cuellar; work on opposition to motion to dismiss | | 3.4 |
| Aug 16, 2001 | work on opposition to motion to dismiss | | 3.5 |
| Aug 17, 2001 | conference with co-counsel; prepare for meeting with Sec. Cuellar; travel to and from Austin | | 7.5 |
| Aug 17, 2001 | conference with co-counsel; prepare for meeting with Sec. Cuellar; travel to and from Austin (Melissa) | 7.5 | |
| Aug 18, 2001 | work on memo for Sec. Cuellar and work on response to M to dismiss | | 4.5 |
| Aug 21, 2001 | motion and amended complaint; memo for Sec. Cuellar | | 3.5 |
| Aug 22, 2001 | finalize research on FIOA claim; amend complaint and file with court | | 2.8 |
| Aug 22, 2001 | work on memo for Sec. Cuellar | | 1.5 |

| | | | |
|---|---|---|---|
| Aug 24, 2001 | legal research on opposition to motion to dismiss | | 3.5 |
| Aug 25, 2001 | legal research on opposition to motion to dismiss | | 3.5 |
| Aug 29, 2001 | work on response to motion for summary judgment | | 3.0 |
| Aug 31, 2001 | work on response to motion for summary judgement | | 3.0 |
| Sept 3, 2001 | work on response to motion for summary judgemnt | | 3.0 |
| Sept 10, 2001 | phone conference with Defendants attorney; start work on documents for status  conference | | 1.5 |
| Sept 13, 2001 | review defendants answer and new motion for summary judgment | | 2.5 |
| Sept 19, 2001 | legal research on issues raised by defendants lates motion for summary judgment | | 3.2 |
| Sept 21, 2001 | work on response to motion for summary judgment | | 3.5 |
| Sept 22, 2001 | work on response to motion for summary judgment; prepare affidavit for our expert; conference with co-counsel | | 4.2 |
| Nov. 10, 2001 | Motion for summary judgment, LR; preparation for hearing | | 1.5 |
| Nov. 12, 2001 | Prepare for hearing; LR | | 4.4 |
| Nov. 13, 2001 | Travel to Brownsville; meet with clients; hearing before Judge on status of case and motion for summary judgment; travel back to SA  (Rios) | | 10.5 |
| Nov. 13, 2001 | Travel to Brownsville; meet with clients; hearing before Judge on status of case and motion for summary judgment; travel back to SA (Korbel) | | 10.5 |
| Nov. 23, 2001 | Review recent decision on FOIA request; prefect our request | | 4.2 |
| Nov. 26, 2001 | LR on recent FOIA ruling; conferences with cocounsel on cross motion for summary judgment | | 5.4 |

| Date | Description | | |
|------|-------------|---|---|
| Nov. 29, 2001 | LR on recent FOIA ruling; conferences with cocounsel on cross motion for summary judgment | | 5.0 |
| May , 2002 | Review the latest order from Judge Tagle on motion to enter judgment; confer with cocounsel | | 1.0 |
| May , 2002 | confer with cocounsel on issues on appeal; legal research | | 1.0 |
| May , 2002 | work on appeal memo | | 4.5 |
| May , 2002 | continue work on appeal memo; phone conference with clients on workshop and meeting set for April 30. | | 1.8 |
| May , 2002 | coordinate trip scheduled for the 30th; review latest certiorari grant on the Utah statistical sampling case. | | 1.5 |
| May , 2002 | work on outline of issues for the appeal – three main issues – standing, intent, and census act. | | 4.5 |
| May , 2002 | review briefs filed at ninth circuit; work on appeal issues and prepare for presentation to clients | | 4.5 |
| May , 2002 | travel to Cameron and Hidalgo counties; confer with clients on the status of case and the pending appeal; travel back to San Antonio | | 11.5 |
| October 1, 2002 | work on standing issues for the brief (MC) | 3.8 | |
| October 2 , 2002 | review defendants brief and work on our brief on FOIA response | | 3.5 |
| October 2, 2002 | work on standing and equal protection issues for the brief (MC) | 4.5 | |
| October 4, 2002 | work on standing and equal protection issues for the brief (MC) | 3.0 | |
| October 8, 2002 | review 9th circuit decision on Los Angeles case; incorporate parts into our brief | | 2.5 |
| October 8, 2002 | work on brief; confer with co-counsel; review developments in the Oregon Case; seek 30 delay on due date for brief | | 5.5 |
| October 9, 2002 | review 9th circuit decision on FOIA claim (Carter v. US); work on brief; confer with co-counsel | | 2.7 |
| October 24, 2002 | work on FOIA part of the brief | | 4.5 |

| Date | Description | | |
|---|---|---|---|
| October 21, 2002 | work on standing and equal protection issues for the brief (MC) | 4.8 | |
| October 23, 2002 | work on standing and equal protection issues for the brief (MC) | 3.5 | |
| October 25, 2002 | continue work on standing and equal protection issues for the brief (MC); work on motion for extension of time | 5.5 | |
| October 25, 2002 | work on FOIA part of the brief and work on Census Act claim | | 4.5 |
| October 30, 2002 | continue work on standing and equal protection issues for the brief (MC); pc with co-counsel; work on motion for extension of time | 4.8 | |
| October 31, 2002 | continue work on standing and equal protection issues for the brief (MC); | 3.5 | |
| November 11, 2002 | work on brief re FOIA claim | | 3.8 |
| November 12, 2002 | work on brief re FOIA claim | | 4.0 |
| November 12, 2002 | work on standing and equal protection issues for the brief (MC) | 5.5 | |
| November 13, 2002 | work on standing and equal protection issues for the brief | | 6.5 |
| November 14, 2002 | work on final draft of brief | | 2.5 |
| November 14, 2002 | work on final draft of brief   (MC) | 3.5 | |
| November 15, 2002 | work on final of brief | | 7.5 |
| November 15, 2002 | work on final of brief(MC) | 2.5 | |
| November 15, 2002 | work on final of brief - cite checking and editing. | | 3.5 |
| November 18, 2002 | work on final of brief; serve all parties and file with the Court | | 9.5 |

| | | | |
|---|---|---|---|
| November 22, 2002 | review reports on Department of Justice decision not to appeal 9th circuit decision; conference with clients; prepare and send out notice | | 2.5 |
| December 23, 2002 | work on analysis of the released data and impact on our other claims | | 1.5 |
| February 3, 2003 | Prepare report for clients; travel to Brownsville | | 5.5 |
| February 4, 2002 | meet with clients (Hidalgo and Cameron) on results of the case; travel back to San Antonio | | 7.8 |
| February 5, 2002 | confer with the defendants on dismissal of cross appeals; prepare notice of dismissal | | 3.8 |
| February 5, 2003 | work on fees request | | 2.5 |
| February 7, 2003 | phone conference with other firm in DC seeking fees; work on our request | | 2.8 |
| February 10, 2003 | work on fees application. | | 4.5 |
| February 11, 2003 | work on fees application. | | 8.5 |
| February 12, 2003 | work on fee application and send for filing. | | |
| | | | |
| | **TOTAL HOURS** | 62.2 | 528.7 |

# Law Offices of Rolando L. Rios
### ATTORNEYS AT LAW
115 E. Travis, Suite 1645
San Antonio, Texas 78205

# EXPENSES

Client: Census Litigation:
*Cameron County et. al. V. Donald Evans et. al.*
CA No. B-01-082

| Date: | Activity: | Hours | Rate: | Amount: |
|---|---|---|---|---|
| **Costs Advanced:** | | | | |
| April 9, 2001 | Travel | | | $36.80 |
| April 10, 2001 | Travel | | | $21.12 |
| April 9 and 10, 2001 | Travel (flight) | | | $284.06 |
| May 10, 2001 | Travel to Cameron and Hidalgo Counties | | | $333.25 |
| May 29, 001 | Travel to Cameron and Hidalgo Counties | | | $320.20 |
| June 26, 2001 | Travel to Cameron and Hidalgo Counties | | | $203.25 |
| June 2001 | expert fee (Chapa) | | | $1,800.00 |
| July 16, 2001 | Travel to Cameron and Hidalgo Counties (2 persons) | | | $503.03 |
| August 17, 2001 | Trave to Austin | | | $117.50 |
| August, 2001 | Dr. Rives, Expert fees | | | $2,750.00 |
| Oct. 19, 2001 | Triangle Reproductions | | | $154.05 |
| Sep. 7, 2001 | Fed Ex | | | $13.00 |

| | | | | |
|---|---|---|---|---|
| Sep. 7, 2001 | Fed Ex | | | $20.54 |
| Sep. 7, 2001 | Fed Ex | | | $13.00 |
| Sep. 7, 2001 | Fed Ex | | | $20.54 |
| Sep. 28, 2001 | Fed Ex | | | $20.54 |
| Oct. 22, 2001 | Fed Ex | | | $29.38 |
| Oct. 22, 2001 | Fed Ex | | | $20.54 |
| Oct. 22, 2001 | Fed Ex | | | $20.54 |
| Oct. 29, 2001 | Fed Ex | | | $13.00 |
| Nov. 13, 2001 | Southwest Airlines | | | $215.00 |
| Nov. 13, 2001 | Budget Rental | | | $57.33 |
| Oct. , 2001 | Jose Garza, travel, airfare, meals | | | $46.40 |
| | Expert fee – Dr. Jorge Chapa | | | $1,890.00 |
| February 28, 2002 | Exp. Mail | | | $12.45 |
| Jan. 17, 2002 | Southwest Airlines | | | $215.00 |
| Jan. 25, 2002 | Southwest Airlines | | | $215.00 |
| Nov. 13, 2001 | Budget Rental | | | $57.33 |
| April 31, 2002 | Southwest Airlines | | | $215.00 |
| Mar/Apr | faxes and copies | | | $50.00 |
| October 25 | fed ex | | | $30.00 |
| November, 2002 | Document binding | | | $380.58 |
| November, 2002 | fed ex | | | $102.48 |
| November, 2002 | copies | | | $0.00 |
| 2/3/03 | travel | | | $381.94 |
| TOTAL | Balance Due This Invoice | | | $10,562.85 |

ATTACHMENT NO. 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CAMERON COUNTY, TEXAS et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. B-01-082 |
| | § | |
| DONALD EVANS, Secretary of the | § | |
| Department of Commerce, et al., | § | |
| Defendants | § | |

## DECLARATION OF MELISSA CASTRO

### 1. Background

I am an attorney with the Law Offices of Rolando L. Rios and I
represented Plaintiffs, Cameron County et. al., in the above-styled matter.  I am
presenting this declaration in support of Plaintiffs' Motion for Attorney's Fees and
Costs.

### 2.    Time

The time I and my staff spent on this case is kept
contemporaneously with the work performed and recorded on a daily basis.   For
the time period from  March 29, 2001 through February 2003, I devoted a total of
62.2 hours in preparation and prosecution of this action.  Time records, which
reflect the time I spent on this action, are attached hereto.  (Attachment 1 to Rios
Declaration)

There was no unnecessary duplication of efforts. Me and my co-counsels
on this case carefully coordinated our efforts so as to avoid unnecessary
duplication; I focused on preparing drafts of pleading, coordinating conferences
with opposing counsel and legal research especially on the appeal brief.   The
amount of time expended in this case was necessary because it presented several
difficult questions of law.  The time spent on this case represent the minimum
hours necessary for an adequate preparation of pleadings and redistricting plans.

The time I spent preparing for this case was used for successfully obtaining the injunctive relief and release of the adjusted census data that showed the Latino Community was severely undercounted in the 2000 US Census.

**3.   Market Rate**

The prevailing rate for work of this type of federal court work is at least $150.00 per hour; indeed I have been awarded similar rates in another similar case.

**4.   Lodestar**

In determining the Lodestar, a court should usually consider the actual hours devoted to the case and the market hourly rate for the lawyer in question. I have devoted 62.2 hours to the successful prosecution of this cause. The prevailing market rate for Melissa Castro for this case should be $150.00 per hour. Therefore, the lodestar for the Melissa Castro is $9,330.00 (62.2 hours @ $150.00).

**5. *Johnson* Factors:**

The *Johnson* factors, *Johnson v. Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974), in determining the amount of attorney fees that the undersigned would highlight are as follows:

*a.   Preclusion of Other Employment.* My work in this litigation restricted the time available for pursuit of other litigation during the period of activity in this case. Because of the extensive work required in preparing and prosecuting this case, it was necessary for me to forego representing other potential clients for the Law Firm of Rolando L. Rios.

*b. Time Limitation Imposed by Circumstances.* The time limitations in this case were imposed by pending redistricting work, the failure of the defendants release data that should have been readily available.

*c. Undesirability of the Case.* This case was filed against the federal government and I am co-counsel for the Plaintiffs, Cameron County et. al. This case is very undesirable for private attorneys due to the time constraints of the case and because of the specialized nature of the actions.

*d. Experience and Expertise.* As a first year lawyer, I have focused in the area of Civil Rights litigation and have worked on other similar cases.

*e. Contingent nature of the case:* This case was taken on a partially contingency basis; the full payment for the time spent on this case is contingent upon our success in the litigation. It is my opinion, based on my experience, on awards made for my services in similar cases several years ago and upon inquiring of other lawyers, that the prevailing market rate for an attorney of over twenty years experience, trying a case in his/her area of specialization, in a difficult and complicated civil rights case is at lease $150.00 per hour. Over a year ago, in the Texas Redistricting litigation styled as *Balderas et. al. v. State of Texas,* No. 6:01CV158 I was awarded $125 per hour for successfully defending the voting rights of the Latino Community. A request of $150 per hour a year later appear reasonable to me.

3

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.



_____
Melissa Castro

Attorney for Plaintiffs Cameron County et. al.
SWORN TO AND SUBSCRIBED before me appeared and executed this
document MELISSA CASTRO on this the 12ᵗʰ day of February, 2003.

*Diana Amaya*
_____

**DIANA AMAYA**
**MY COMMISSION EXPIRES**
**September 9, 2008**

Notary Public
My commission expires: Sep 9, 2006

ATTACHMENT NO. 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CAMERON COUNTY, TEXAS, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | Case No. B-01-082 |
| | § | |
| DONALD EVANS, SECRETARY OF | § | |
| COMMERCE, in his official capacity; | § | |
| and UNITED STATES DEPARTMENT | § | |
| OF COMMERCE, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF JOSE GARZA

**Background**

      1.      I am co-counsel for Plaintiffs in the above styled matter. My resume is attached hereto as Exhibit No. 1. I am presenting this affidavit in support of the Plaintiffs' Motion for Attorneys' Fees and Costs.

**Time**

      2.      My time in this case is kept contemporaneously with the work performed and recorded on a daily basis. For the time period ending February 12, 2003, I devoted a total of 164.25 hours to prepare and prosecute this action. I have attached the time records that I maintained in this action as Exhibit No. 2.

      3.      There was no unnecessary duplication of efforts. My co-counsel on this case, Rolando L. Rios, and I carefully coordinated our efforts so as to avoid unnecessary duplication. The time devoted to this case was necessary because the Defendants submitted a substantial and formidable defense to the release of the adjusted census data

1

that required a reasoned and well-developed response. The time spent on this case represents the necessary hours for an adequate preparation of the pleadings, exhibits, and witnesses and for the development and preparation of the Plaintiffs' case. Moreover, I have exercised billing judgment and have excluded time devoted exclusively to issues on which Plaintiffs did not prevail. See Exhibit 2.

**Market Rate**

      4.      In a recent civil rights case, the State of Texas stipulated and the United States District Court for the Eastern District of Texas accepted the prevailing market rate for my work at $325 per hour. In prior years, I have been compensated in successful civil rights actions at rates of $200 to $275 per hour. I believe the prevailing market rate for civil rights cases of this sort for lawyers of my experience is $325 per hour.

**Lodestar**

      5.      In determining the lodestar a court should usually consider the actual hours devoted to the case and the market hourly rate for the lawyers in question. I have devoted 164.25 hours to the successful prosecution of this cause. The prevailing market rate for Jose Garza in this case is $325 per hour. Therefore, the lodestar in this case for Jose Garza is $53,381.25.

**Johnson Factors**

      6.      *Preclusion of Other Employment.*    My work in this litigation restricted the time available for pursuit of other litigation during the period of activity in this case.

      7.      *Experience and Expertise.*    My experience has included participation in federal litigation, extensive advocacy in state and federal administrative hearings, and preparation of pleadings, briefs, and evidence for cases in both state and federal courts.

In the 24 years since I was licensed, I have tried numerous civil rights cases as lead counsel and co-counsel in federal and state district courts, courts of appeal and before the United States Supreme Court. I have included a partial list of some of the cases I have tried in my attached resume.

**Costs**

8. The expenses claimed in this motion are actual expenses made to properly and successfully prosecute this action. They include expenses for necessary travel, copying, postage, exhibit preparation and the like.

9. The expenses incurred by me in this litigation total $1,627.88.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Jose Garza
Attorney for Plaintiffs

**Exhibit No. 1**

**JOSE GARZA**
**LAW OFFICE OF JOSE GARZA**
**1913 Fordham**
**McAllen, Texas 78504**
**956.928.0088**
garzpalm@aol.com

## EDUCATION

-J. D., St. Mary's University, School of Law, 1975-1978
-M. A., Education, University of Texas, San Antonio, 1973-1975
-B. S., Texas A&I University, Kingsville, 1971-1973
-Del Mar College, Corpus Christi, 1969-1971

## WORK EXPERIENCE

-Law Office of Jose Garza
        March, 2001- present
        1997-1998
-Texas Rural Legal Aid
        Litigation Director, 1998- present
        Litigation Coordinator, 1990-1996, 1997
        Branch Manager, Laredo office, farm worker division, 1978-1979
-Gray & Becker, Austin, Texas
        Staff Attorney, 1996-1997
        Of Counsel, 1994-1996
-Mexican American Legal Defense and Educational Fund
        Acting Vice-President for Legal Programs, Jan., 1989- May, 1989
        Director, Political Access Project, 1986-1990
        Regional Counsel and Director, Political Access Project, 1982-1985
        Staff Attorney, 1979-1982
-Texas Attorney General
        Special Assistant, Jan., 1986- July 1986
-University of Texas
        Adjunct professor, fall semester of 1988, 1989, 1990, 1992, 1993, & 1994
                Voting Rights Seminar
-St. Mary's University
        Adjunct professor, spring semester of 1990, 1995, fall semester of 1992

## LITIGATION EXPERIENCE

I have practiced primarily before the United States District Courts and the United States Courts of Appeal. I have also argued before the United States Supreme Court. My experience includes trial preparation, trial presentation, and appellate advocacy.

## PROFESSIONAL AND CIVIC ACTIVITIES

-Member, State Bar of Texas and Section of Concerns of the Spanish Speaking
-Member, Bar of the United States District Court for the Western, Southern and Northern Districts of Texas, for the District of Colorado, and the Northern District of California
-Member, Fifth Circuit, D. C. Circuit, and Tenth Circuit, United States Courts of Appeal
-Member, United States Supreme Court
-Member, Hidalgo County Bar Association
-Member, Every Texan Foundation Board of Directors (Voter registration and education non-profit organization)
-Member, Valley Initiative for Development and Advancement Board of Directors (Job Training and Education Non-profit organiztion)

## SIGNIFICANT CASES

*Aguero v. Christopher*, 481 F. Supp. 1272 (S.D. Tex. 1980) – Lead counsel in successful farm worker action brought to enforce provisions of the Wagner-Peyser Act and the Fair Labor Standards Act.

*Alonzo v. Jones*, C-81-277 (S. D. Tex. 1983) – Lead counsel in successful challenge under the Voting Rights Act to the at-large election system for the City of Corpus Christi, Texas.

*Comm. Ct. of Medina County v. United States*, 719 F. 2nd 1179 (D. C. Cir. 1983) – Lead counsel in successful defense against preclearance under Section 5 of the Voting Rights Act of gerrymandered redistricting plan.

*Lockhart v. United States*, 102 S. Ct. 988 (1983) – Lead Counsel representing minority defendant-intervenors opposing City of Lockhart's preclearance proceedings before United States District Court for the District of Columbia and before the United States Supreme Court.

*Terrazas v. Clements*, 537 F. Supp. 514 (N. D. Tex. 1982) – Co-counsel in successful challenge to the plans for Texas House of Representatives districts for Bexar and El Paso Counties.

*Mena v. Richards*, C-454-91-F (332nd Judicial District, Hidalgo County, Texas, 1992) – Co-Lead Counsel in successful challenge to the 1991 redistricting plans for the Texas House of Representatives and Texas Senate.

**Exhibit No. 2**

Time Records – Jose Garza
Undercount litigation

| Date | Activity | Time |
|---|---|---|
| 3-26-01 | Confer with R. R. regarding possible legal action on behalf of Valley jurisdictions concerning the the undercount. (.5); review census report on undercount (1); review some of the pleadings in L. A. case (.75); review tables and charts on estimates of undercount (.75). | 3.0 |
| 3-27-01 | Attend Commissioners Court hearing on possible legal legal action and representation arrangement. | 1.25 |
| 4-9-01 | Travel to Harlingen and Brownsville for meeting with Cameron County officials.(1.5)  Confer with R. R. on status of  legal action, division of labor, causes of action, etc(.5); mtg. with County Judge and his staff.  Discuss legal strategy and begin discussing evidence County would have to develop.(3.5) Mtg. with representatives of various cities in Cameron County discuss legal strategies, their responsibilities on gathering data, and contributing to litigation fund. (1.25); travel to McAllen | 8.75 |
| 4-10-01 | Confer with Gary Gurowitz; discuss role of co-counsel, and legal strategies and theories; meeting with Hidalgo County Commissioners Court; meeting with R. R. on things that need to be done; travel to Harlingen and back; confer with McAllen city attorney on role of city. | 4.75 |
| 4-13-01 | Research. Read Dept. of Commerce v. United States House of  Representatives, dist. ct. case and supreme ct. case. begin review of 14 USC §147 et seq. | 3.0 |
| 4-16-01 | Confer with Dr. Jorge Chapa about possible availability as expert and possible expert testimony.  Discussed current work on census issues, knowledge of undercount, credentials, availability, and getting information on census undercount he may have. | 1.0 |
| 4-18-01 | Review J. Fassel's report on the undercount.  Confer with Dr. Bill Reeves on possible use as expert.  Go over his Methodology for estimating population of local jurisdictions. Review procedure used in *Valdespino* and possible use here. | 1.5 |
| 4-20-01 | Confer with G. G. on data and other evidence we need to start gathering. Set up meeting for Friday, 3-27-01. | .25 |

| | | |
|---|---|---|
| 4-24-01 | Begin work on file memo on outline for case. Legal strategies, important cases, essential elements of case, evidence needed etc. | 4.0 |
| 4-25-01 | Confer with Jorge Chapa on schedule; confer with RR & Korbel on issues that need research, status of complaint. | 1.25 |
| 4-26-01 | Research. Review *Valdespino* and *Garza*. Review *Kirkpatrick*, and Const. Cases. Wk. on memo to file. | 5.0 |
| 4-27-01 | Wk on memo to file. Mtg. with G.G. and Steve Crain. Go over theory of case and type of evidence needed. Discuss importance of *Valdespino* and *Garza*. Conf. with RR on status of filing and what he needs to finalize. Called Lisa Aleman on status of municipalities response to legal action. | 3.5 |
| 5-1-01 | Confer with Lisa A. about status of city clients and role of Hidalgo County in press statement, press conf. Etc. | .25 |
| 5-2-01 | Confer with Steve Crain and Rolando Rios re status of mtgs with co. staff, status of city clients, prep. for filing complaint. Confer with Cong. Rod. Staff about status of HR 941. | .5 |
| 5-3-01 | Meeting with Steve Crain and Bonnie Gonzalez re adjusted census and possible role of border advocate organizations in that effort. | 1.25 |
| 5-4-01 | Prepare packet for B.G. for trip to D. C. to push census adjustment. | .25 |
| 5-7-01 | Review draft of complaint, prepare for meeting with experts. | 2.0 |
| 5-8-01 | Travel to San Antonio, meeting with Rios and Korbel, review changes to complaint, confer with Adriana re status of city clients, review with RR and K what we anticipate we need from experts, travel to Indianapolis. | 11.0 |
| 5-9-01 | Meeting with Chapa, go over data needed scope of his role in case and give him assignment for initial memo. Travel to Columbus with Chapa and meet with Rives. Discuss nature of case and role Rives and Chapa would have in case. Go over his knowledge, opinion on undercount accuracy of numbers, position of the dept. of comm. regarding release | 14.25 |

|  |  |  |
|---|---|---|
|  | of their estimates of undercount; discuss Chapa's work on Colonias and particular difficulties with securing accurate count in those types of areas. Discuss their suggestions on data we need and methodologies to develop better numbers and importance of reviewing census own estimates of under-count. Travel to Indianapolis. |  |
| 5-10-01 | Travel to San Antonio. Meeting with RR on filing of comp. Discuss assignments, status of foia letter. Travel to McAllen. | 10 |
| 5-23-01 | Confer with Lisa A. about plans to secure tax records and place ad in paper. Review tax record request, review ad draft, review correspondence received from LUCA program. | .5 |
| 5-24-01 | Confer with Rives on Hidalgo County's ad and tax record plans. | .5 |
| 5-28-01 | Confer with Rolando on trip to Cameron County and discuss logistics status of work that needs to be done. Work on production of doc. | 1.5 |
| 5-29-01 | Travel to Brownsville, meeting with Rios, Silver, Frank Graciela Salinas, etc. get working papers on Cameron County's work on estimate of pop. for rural areas and cities. | 7.25 |
| 6-1-01 | Review memo from Chapa. | .25 |
| 7-10-01 | Travel to Austin, Mtg. With H. Cuellar about possible help with administration on release of undercount adjusted data. | 5.5 |
| 7-16-01 | Travel to Brownsville; mtg with clients in Cameron Co. update on litigation; travel to Edinburg, mtg with clients brief on status of case. | 7.25 |
| 7-30-01 | Review foia requirements and exemptions. Research. | 1 |
| 8-8-01 | Review motion to dismiss. Confer with experts. Wk. on motion to produce docs. | 3.75 |
| 8-17-01 | Travel to Austin, Confer with RR on latest report on undercount. Mtg. with Cuellar and Sullivan from Gov. office. Discuss possible strategy for getting feds to release adjusted data. | 4.75 |

| | | |
|---|---|---|
| 8-20-01 | Confer with RR on reports and status of case. | .25 |
| 8-31-01 | Finish 1st draft of interr. And production of docs. | 4.75 |
| 9-5-01 | Research issues of equal protection, review Arlington Heights; LA county intent issues, review D's motion to dismiss, review draft of response and affidavits confer with RR on logistics for filing. | [5.5] |
| 9-6-01 | Work on draft of Section of brief on equal protection Review amended complaint for allegations of intent, confer with B.Rives on possible affidavit for supp. brief. | [6] |
| 9-20-01 | Review Chapa affidavit wk on supp. response to new motion. | [3] |
| 9-23-01 | Confer with RR on response to motion to dismiss. Discuss Chapa affidavit, make changes. | [2.75] |
| 9-24-01 | Confer with Chapa, modify exhibits. | [.25] |
| 9-28-01 | Confer with RR on status of response to 2nd motion to dismiss and logistics for filing. | [.25] |
| 10-1-01 | Review response and make changes, travel to Brownsville Confer with RR. File pleading. Travel to McAllen. | [4.5] |
| 10-10-01 | Confer with RR on possible release of adjusted numbers by dept. of Commerce and status of discovery. | 1.0 |
| 10-15-01 | Confer with Eddie Castro on possible release by census of adjusted numbers. | .5 |
| 10-16-01 | Review report from Price Waterhouse on implications for adjustment. | .75 |
| 10-18-01 | Review rules on conf. with court. Begin review of new census report and production of doc. | 2.5 |
| 10-25-01 | Confer with RR on changes to management report to ct Confer with Rives on his next assignment. | .75. |
| 10-28-01 | Make modifications to jt. Management report and have Melissa send to DOJ lawyer. | 1.5 |
| 11-11-01 | Confer with RR on strategy for ct hearing. Review | 4 |

|  | Motions and responses. Review cases, moot ct RR. |  |
|---|---|---|
| 11-12-01 | Continue to wk with RR on ct presentation. Do 2nd Moot ct. | 3 |
| 11-13-01 | Confer with RR on possible strategy post hearing (added discovery, need for post hearing briefing etc.) | .5 |
| 1-23-02 | Review new order from Cal. Ct. review discovery, confer with RR on need to inform ct of latest development. | 2 |
| 1-24-02 | Travel to Brownsville. Confer with clients, status of case need to develop data. Possible witnesses, confer with G. K. travel to Edinburg, mtg. with Lisa Aleman, Co. Judges office. | 5.5 |
| 1-30-02 | Review cts order and discuss with Lisa (hidalgo county), and Remie (Cameron Co.) | 1 |
| 1-31-02 | Confer with RR on ct's order steps to follow. Call Waxman's office research what release of data means to to funding process. Confer with Lisa set up meetings with clients. | 2.25 |
| 2-26-02 | Wk on motion to enter judgment. Research, review order, Wk on and review Def.'s motion to stay. | 4.75 |
| 3-8-02 | Continue wk on motion to enter judgment, research Prevailing party issue on possible fees under FOIA, review Ct's order for possible appeal issues. Discuss with RR and MC possible appeal or re-filing on procedural issues. | [4] |
| 3-28-02 | Review Ct.'s most recent order, confer with RR, confer with Def.'s counsel. | .5 |
| 4-3-02 | Review proposed judgment. | .25 |
| 4-9-02 | Confer with RR and M.C. on research issues, status of appeal and division of labor. | .5 |
| 4-17-02 | Research appeal issues, notice requirements. | 1 |
| 4-26-02 | Confer with RR on status of mtg in Brownsville status of discussions with Hidalgo County clients and time lines for decision to appeal. | .25 |

| | | |
|---|---|---|
| 4-30-01 | Travel to Brownsville and back. Confer with Comm. Ct. Staff. Meeting with Cameron County Comm. Ct. | 6.5 |
| 5-7-02 | Confer with Lisa on status of case, dec. of Cameron County need to meet with Hidalgo County Comm. Ct. | .25 |
| 5-14-02 | Presentation and meeting with Hidalgo County Comm. Ct. | 1.0 |
| 5-21-02 | Confer with RR and MC on status of notice of appeal. | .25 |
| 7-15-02 to 11-15-02 | wked on appeal on issues of standing and equal protection, wk included reviewing of file, review def.'s brief on same, research, draft sections of brief on these issues and briefing clients of on status of case and appeal. | [43.5] |
| 11-22-02 | Confer with MC on news that Gov't was not appealing Calif. Case. and implications for our case. | .25 |
| 12-09-02 | Confer with DOJ lawyer on possibility of dismissal of appeal. | .5 |
| 12-10-02 | Review DOJ's dec. on 9th cir. Case. | .25 |
| 12-16-02 | Begin review of undercount data. Confer with RR. | 1.25 |
| 1-6-03 | Confer with RR on strategy for remainder of case. Set up meetings with clients. | .75 |
| 1-29-03 | Review data. Discuss options. | 1 |
| 2-4-03 | Travel to Brownsville and back. Mtg. with Cameron Co. Comm. Ct. and meeting with Hidalgo County Comm. Ct. | 4.25 |
| 2-7-03 | Wk on fees affidavit. | 1 |
| 2-11-03 | Review motion and memo on fees. Suggest changes. | .5 |

Total Billed Hours:    164.25[1]
Lodestar:        164.25 @ $325 per hr. = $53,381.25

Costs:
Travel: Travel mileage and meals to Brownsville for
meetings with Cameron County Commissioners Court or their staff –

---

[1] Hours designated by [ ] are exercise of billing judgment and are not included in the total billed hours.

4-09-01 - $36.80; 5-29-01 - $36.16; 7-24-01 - $36.48; 10-1-01 - $46.40; 1-30-02 - $55.85; 1-25-02 - $50.30; 2-4-03 - $36.88.
Subtotal: $298.87

Travel to Indiana and Ohio for meetings with experts May 8-10, 2001:

Mileage to San Antonio- 425 miles @ .32 = $136.00
Airfare: $331.75
Hotel $78.60
Parking: $15.00
Meals: $68.00

Subtotal: $629.35

Travel to San Antonio to work with co-counsel:
8-17-01 –      airfare: $200.50
               meals: $12.00
               mileage: $27.20

Subtotal: $237.70

Travel to San Antonio to work with co-counsel:
9-5-01 to 9-7-01 -      airfare:$106.25
                        car rental: $73.73
                        meals: $48.00
                        pkg.: $8.00

Subtotal: $235.98

Travel to Austin for meeting with Henry Cuellar and research at UT LBJ school:
7-24-01 -      airfare: $101.75
               hotel:  $82.23
               meals: $42.00

Subtotal $225.98

Total Out of Pocket Expenses:      $1,627.88