

United States District Court
Southern District of Texas
FILED

MAR 0 4 2003

Michael N. Milby
Clerk of Court

32

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CAMERON COUNTY, TEXAS, et al.,
      Plaintiffs,

    v.                       C.A. No. B-01-082

DONALD EVANS, SECRETARY OF
COMMERCE, in his official
capacity; and UNITED STATES
DEPARTMENT OF COMMERCE,
      Defendants.
_____/

## Defendants' Memorandum In Opposition
## To Plaintiffs' Motion for Attorney Fees and Costs

ROBERT D. MCCALLUM, JR.
Assistant Attorney General

MICHAEL T. SHELBY
United States Attorney

THOMAS MILLET
Attorney in Charge
D.C. Bar No. 294405
Attorney, Civil Division
Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, D.C. 20044
Tel:(202) 514-3313
Fax:(202) 616-8460
Attorneys for Defendants.

## TABLE OF AUTHORITIES

Action on Smoking and Health v. C.A.B., 724 F.2d 211
(D.C. Cir. 1984)                                              11

Alyeska Pipeline Service Co. v. Wilderness Society,
421 U.S. 240 (1975)                                          10

Assembly of the State of California v. U.S. Department
of Commerce, 968 F.2d 916 (9th Cir. 1992)                    8

Blue v. Bureau of Prisons, 570 F.2d 529 (5th Cir. 1978)      4

Blum v. Stetson, 465 U.S. 886 (1984)                         14

Carter v. U.S. Department of Commerce, 307 F.3d 1084
(9th Cir. 2002)                                              9

Florida House of Representatives v. U.S. Department
of Commerce, 961 F.2d 941 (11th Cir.), cert. dismissed,
506 U.S. 969 (1992)                                          8

Hedley v. United States, 594 F.2d 1043 (5th Cir. 1979)       8

Hensley v. Eckerhart, 461 U.S. 424 (1983)                    11

Hexamer v. Foreness, 997 F.2d 93 (5th Cir. 1993)             11

Islamic Center of Mississippi v. Starkville,
Mississippi, 876 F.2d 465 (5th Cir. 1989)                    14

Martinez v. Secretary of Health and Human Services,
815 F.2d 1381 (10th Cir. 1987)                               9

Milton v. Bowen, 824 F.2d 655 (8th Cir. 1987)                9

National Association of Concerned Veterans v. Secretary
of Defense, 675 F.2d 1319 (D.C. Cir. 1982)                   11

Northwest Coalition for Alternatives to Pesticides
v. Browner, 965 F. Supp. 59 (D.D.C. 1997)            12, 15, 18

Shu Chen v. Slattery, 842 F. Supp. 597 (D.D.C. 1994)         16

State of Texas v. I.C.C., 935 F.2d 728 (5th Cir. 1991)      3, 4

<u>Watkins v. Fordice</u>, 7 F.3d 453 (5th Cir. 1993)          12, 16, 17

## FEDERAL STATUTES

Freedom of Information Act, 5 U.S.C. § 552               Passim

Equal Access to Justice Act, 28 U.S.C. § 2412            8, 15

## TABLE OF CONTENTS

Statement of the Nature and Stage of the Proceedings . . . . . . 1

Statement of the Issues to be Ruled
  Upon by the Court   . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . 1

Argument   . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   Plaintiffs Are Not Entitled To An Award  . . . . . . . . . 3

     A. There Is No Public Benefit to the Release
        of Inaccurate Adjusted Data . . . . . . . . . . . . . . 3

     B. Plaintiffs' Interests in the Adjusted
        Data Preclude a Fee Award . . . . . . . . . . . . . . . 6

     C. Defendants' Withholding Was Reasonable  . . . . . . . . 8

II.  Any Award Must Be Substantially Reduced  . . . . . . . . . 9

     A. Plaintiffs Are Not Entitled to Fees
        For their Non-FOIA Claims . . . . . . . . . . . . . . . 9

     B. Plaintiffs' Attorney Hours Are
        Inadequately Documented . . . . . . . . . . . . . . . . 11

     C. Plaintiffs Have Not Documented Their
        Hourly Rate   . . . . . . . . . . . . . . . . . . . . . 14

     D. Plaintiffs' Petition Contains Numerous
        Improper Charges  . . . . . . . . . . . . . . . . . . . 16

Conclusion   . . . . . . . . . . . . . . . . . . . . . . . . . . 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CAMERON COUNTY, TEXAS, et al.,
        Plaintiffs,

     v.                    C.A. No. B-01-082

DONALD EVANS, SECRETARY OF
COMMERCE, in his official
capacity; and UNITED STATES
DEPARTMENT OF COMMERCE,
        Defendants.
_____/

**Defendants' Memorandum In Opposition
To Plaintiffs' Motion for Attorney Fees and Costs**

Statement of the Nature and Stage of the Proceeding

Plaintiffs have moved for an award of attorney fees and costs under the Freedom of Information Act, 5 U.S.C. § 552.

Statement of the Issues to be Ruled upon by the Court

1. Whether plaintiffs are entitled to an award of fees in this case.

2. Assuming that an award of fees is permitted, whether the fees claimed by plaintiffs should be reduced.

Summary of Argument

Despite the fact that plaintiffs were unsuccessful in this case on four of the five issues decided by this Court, plaintiffs have, under the guise of a fee application under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), filed a fee request which seeks recovery of 100% of their time,

including time spent on the unsuccessful claims for which no
fee-shifting applies and on which plaintiffs did not prevail.
Plaintiffs have neither demonstrated an entitlement to any
fees under the FOIA nor properly supported their claim for
fees.

A fee award under the FOIA may only be made where the
public benefits from the released documents, where plaintiffs
do not receive any benefit, and where defendants' withholding
of the documents was not reasonable.  Here, plaintiffs
obtained the release of adjusted data so flawed that the
Census Bureau has determined that they can be used for no
official purpose; data which this Court agreed is so
unreliable that it is sheer speculation that any government
official would ever use to benefit plaintiffs.  Order of
January 28, 2002, p.7.   Plaintiffs cannot satisfy the
threshold showing of a public benefit necessary to qualify for
a fee award under the FOIA.  Indeed, plaintiffs' avowed
interest in obtaining the data is to induce government
officials into relying on those flawed data to plaintiffs'
benefit and to the detriment of other jurisdictions.
Moreover, with no controlling legal authority and the only
authority from other jurisdictions evenly split, defendants'
refusal to provide the adjusted data was reasonably based in

law and independently precludes an award of fees here.

. Even if plaintiffs could qualify for fees, however, their application is woefully inadequate.  Plaintiffs have made no effort to segregate their claim for FOIA fees from the vast bulk of their attorney time spent on their other claims or on other unqualified activities.  Nor have plaintiffs adequately documented their claimed hourly rates of up to $325 per hour.

<u>Argument</u>

I. <u>Plaintiffs Are Not Entitled To An Award</u>

An award of attorney fees and costs to a prevailing plaintiff under the FOIA is not automatic.  Rather, as plaintiffs concede, a court to which a fee petition is directed must consider four factors in deciding whether a fee award is appropriate: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." <u>State of Texas v. I.C.C.</u>, 935 F.2d 728, 730 (5th Cir. 1991)(footnote omitted). Plaintiffs cannot meet this standard to justify a fee award in this case.

A. There Is No Public Benefit to the Release
of <u>Inaccurate Adjusted Data</u>

Simply obtaining the release of government documents is

3

not a public benefit.  Rather, this aspect of the test for
recovery of attorney fees is satisfied only if a release "is
likely to add to the fund of information that citizens may use
in making vital political choices."  Blue v. Bureau of
Prisons, 570 F.2d 529, 534 (5th Cir. 1978).  Thus, for
example, as the Fifth Circuit held in State of Texas v.
I.C.C., 935 F.2d at 733, "if the documents sought in a FOIA
action fail to evidence any fraud or wrongdoing by the agency,
there is little public benefit in their disclosure...."
(footnote omitted).

   In this case, plaintiffs have exposed no fraud or
wrongdoing.  They have only received data compilations which
have been definitively determined by the Census Bureau to be
unfit for any official use.  Those data are useless, at best,
and misleading, at worst.  There is simply no public benefit
from the disclosure of faulty data.

   As the Census Bureau initially reported in recommending
to the Secretary of Commerce that the decennial census not be
adjusted, the indications of potential error in the adjusted
data made those numbers too unreliable to be issued as the
official decennial census for 2000.  See Report of the
Executive Steering Committee for Accuracy and Coverage
Evaluation Policy ("ESCAP"), March 1, 2001 (attachment 4 to

                              4

Defendants' Motion to Dismiss, filed July 20, 2001).
Subsequently, the Census Bureau conclusively determined that
the adjusted data were seriously flawed and that they
"overstated the net national undercount by at least 3 million
persons," making those data too unreliable for any official
uses.  Report of the ESCAP, October 17, 2001 (attachment 1 to
Defendants' Reply Memorandum, file October 20, 2001).[1]

Plaintiffs argue that the adjusted data will aid
government entities and businesses "in making vital choices
concerning the development of priorities and the distribution
of resources."  Plaintiffs' Mem. at 5.  Apart from such
generalities, plaintiffs point to no entity, not even any of
the plaintiff government entities, which has employed the
adjusted data for any public benefit, and defendants are
unaware of any such use of the adjusted data since their
release.  Indeed, given the substantial flaws in the adjusted
data, no such use of the adjusted data would be reasonable.

Indeed, the flaws discovered by the Census Bureau in the
adjusted data are so profound and render the adjusted data so

---

[1] As the Court may recall from the prior proceedings in
this case, the adjusted census results would have added
approximately 3 million persons to the nation's population.
ESCAP Report, October 17, 2001, p.6.  Thus, the discovered
errors in the adjusted results would have equaled the amount
of the adjustment.

unreliable that this Court agreed with defendants' argument
that "it is sheer conjecture" to assume that any responsible
government official would use the adjusted data.  Order of
January 30, 2002, p. 7.  Far from benefitting the public or
helping citizens to make better informed political choices, as
required by Blue, the disclosure of the flawed adjusted data
could indeed create substantial public confusion if plaintiffs
or any other entity attempted to use them for official
purposes instead of the more reliable decennial census data.
Indeed, plaintiffs admit that they intend to inject the
unreliable adjusted data into the public debate over the
allocation of government resources to benefit plaintiff
jurisdictions at the expense of those who would be entitled to
a larger share of those resources if the official census data
were used.  Plaintiffs' generalities fail to explain how the
public is benefitted by plaintiffs' interjection of inaccurate
population data into the debates over the allocation of public
resources.

### B. Plaintiffs' Interests in the Adjusted Data Preclude a Fee Award

The potential benefits to plaintiffs' in the adjusted
data weigh heavily against an award of fees here.  Throughout
this litigation, as discussed above, plaintiffs have asserted
that their interest in obtaining the adjusted data was to gain

6

increased federal and state funding and increased political representation.  As discussed above, and as this Court recognized in ruling that plaintiffs lacked standing on their non-FOIA claims, the adjusted data have been conclusively determined by the Census Bureau to be wholly unreliable for such purposes.

Despite this authoritative conclusion as to the unreliability of the adjusted data, plaintiffs nevertheless candidly admit that they intend to use the adjusted data to influence "government decision-making."  Plaintiffs' Mem. at 7.  Plaintiffs thus intend to use the inaccurate adjusted data to influence responsible government officials to rely on those adjusted data to provide government funds and other resources to plaintiffs to which they would not be entitled if the official decennial census data are used.  Contrary to the altruistic motives plaintiffs ascribe to themselves, their real motive is plain.  Plaintiffs admit that they intend to use the flawed adjusted data in a self-serving way to induce government officials into granting benefits to plaintiffs to which they are not entitled under formulae that rely on the actual population counts.  They want more resources for themselves and their constituents and they intend to justify requests for those resources with the inaccurate adjusted

7

data.  Their admitted ambition to use the inaccurate adjusted
data for their own gain is not in the public interest and
should not be rewarded with attorney fees.

### C. Defendants' Withholding Was Reasonable

Defendants were clearly justified in withholding the
adjusted data as deliberative.  Two courts of appeals had
addressed the question of whether adjusted census data from
the 1990 census which had not been adopted as the final census
data could be withheld as deliberative under exemption 5, with
the Eleventh Circuit agreeing that adjusted data were exempt,
while the Ninth Circuit ruled that they must be disclosed.
Florida House of Representatives v. U.S. Dept. of Commerce,
961 F.2d 941 (11th Cir.), cert. dismissed, 506 U.S. 969
(1992); Assembly of the State of California v. U.S. Dept. of
Commerce, 968 F.2d 916 (9th Cir. 1992).  The existence of such
a split in the case law makes defendants' withholding
eminently reasonable.[2]

In applying a similar, if not more stringent,
"substantial justification" standard under the Equal Access to

_____

[2] Defendants also moved to dismiss the FOIA claim here
because the undisputed facts showed that plaintiffs had failed
to exhaust their administrative remedies, a fatal defect to
judicial review.  Hedley v. United States, 594 F.2d 1043 (5th
Cir. 1979).  While this Court did not address this argument,
it further demonstrates that defendants' position here was
reasonable.

8

Justice Act, 28 U.S.C. § 2412, courts have denied attorney

fees "if the governing law is unclear or in flux," evidenced

by such a split in court decisions.  Martinez v. Secretary of

Health and Human Services, 815 F.2d 1381, 1383 (10th Cir.

1987).  See also Milton v. Bowen, 824 F.2d 655, 657 (8th Cir.

1987).  Here, the governing law was unclear, since no

authority on point existed in this Circuit and the only two

appellate decisions on point were evenly split.  In such

circumstances, defendants' decision to withhold the adjusted

data from the 2000 census was entirely reasonable.[3]

## II. Any Award Must Be Substantially Reduced

As shown above, plaintiffs simply are not entitled to any

fee award in this case.  Even assuming that plaintiffs were

entitled to an award, they clearly may not receive the entire

amount sought in their petition.  Plaintiffs are not entitled

to fees for work performed on the claims they lost, which

comprise the vast bulk of the hours claimed in their petition.

Further, their petition contains insufficient documentation

---

[3] The existence of a split between the circuits is itself
justification for Supreme Court review, further underscoring
the reasonableness of defendants' position.  Rule 10, S. Ct.
Rules.  Here, defendants dismissed their appeal to the Fifth
Circuit only after the Ninth Circuit, following its precedent
from the 1990 census, ordered the release of the adjusted data
for 2000, effectively mooting the FOIA claims here.  Carter v.
U.S. Dept. of Commerce, 307 F.3d 1084 (9th Cir. 2002).

because plaintiffs were not the prevailing parties on those claims. Where a party otherwise eligible for fees succeeds only on some of its claims, "no fee may be awarded for services on the unsuccessful claim." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).

Accordingly, all of the hours claimed by plaintiffs for non-FOIA work must be discounted.

## B. Plaintiffs' Attorney Hours Are Inadequately Documented

It is incumbent on a party seeking attorney fees to provide adequate documentation of the time spent by counsel on the case to allow the Court to determine the propriety of the claimed hours. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. Indeed, insufficient documentation can be grounds for the complete denial of any fee recovery. Hexamer v. Foreness, 997 F.2d 93 (5th Cir. 1993). See also Action on Smoking and Health v. C.A.B., 724 F.2d 211, 220 (D.C. Cir. 1984); Nat. Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Here, plaintiff's documentation is woefully inadequate to sustain the amount they seek.

Plaintiff seek compensation for 164.25 hours for work performed by Jose Garza. A review of his time records

11

attached to his declaration, however, reveals only four entries which even refer to any FOIA activities, with a total of 16 hours for those entries.[4] Even those entries are insufficiently documented, as some lump non-compensable activities with FOIA work.[5]

The declaration of Rolando Rios requests 532 hours of compensable time, while the total hours in the accompanying timesheets amounts only to 528.7 hours. Further, this total is contained in a column headed "RR/GK," suggesting that these hours were billed either by Mr. Rios or George Korbel, another attorney for plaintiffs in this case. Further, the vast bulk of this time is clearly associated with work on plaintiffs' unsuccessful claims under the Census Act or the equal protection clause. Only twelve entries reflect any work by

---

[4] The following entries make reference to specific FOIA work, including the fee petition; May 10, 2001; July 30, 2001; March 8, 2002; and February 7, 2003.

[5] The entry for March 10, 2001 includes time for two trips and an entry for "status of foia letter." Travel time is not compensable at an attorney's normal work rate, Watkins v. Fordice, 7 F.3d 453, 459 (5th Cir. 1993). To the extent that the reference to the "foia letter" means plaintiffs' administrative FOIA request (the amended complaint with the FOIA count not being filed here until September), that time is not recoverable either. Northwest Coalition for Alternatives to Pesticides v. Browner, 965 F. Supp. 59, 65 (D.D.C. 1997).

Messrs. Rios and/or Korbel on the FOIA claim,[6] and, as with
the hours for Mr. Garza, these entries mix compensable and
non-compensable hours.[7] At best, the Rios/Korbel records show
33.1 of FOIA-related time following the administrative
request.

Ms. Castro claims 62.2 hours. None of the records
submitted by plaintiffs document any FOIA-related time spent
by her.

Plaintiffs have thus submitted documentation supporting
only that some portion of approximately 49 hours was devoted
to the pursuit of their FOIA claim, in comparison to the 658.2
hours for which plaintiffs seek compensation. Given that the
FOIA claim was added only in the First Amended Complaint (an
amendment which itself added barely a page to the original
Complaint) and that plaintiffs submitted a total of
approximately five pages of briefing related to the FOIA
claim,[8] it is not surprising that plaintiffs are only able to

_____

[6] See entries for June 6, 2001; June 25, 2001;July 4,
2001; August 22, 2001; November 23, 2001; November 26, 2001;
November 29, 2001; October 2, 2002; October 9, 2002; October
24, 2002; November 11, 2002; November 12, 2002.

[7] For the reasons discussed previously, time claimed for
preparing and monitoring the administrative request in June,
2001 is not recoverable.

[8] See Plaintiffs' Mem. in Opposition to Motion to Dismiss,
pp. 9-10 (Sept. 7, 2001);Plaintiffs' Response in Opp. to

document that a small portion of their overall hours were devoted to their FOIA claim.  The inadequacies of plaintiffs' fee documentation merit the denial of their petition.  At best, given the minor role that the FOIA claim presented in this case, which clearly focused on plaintiffs' constitutional and Census Act claims, the Court should reduce any award to those hours for which plaintiffs have submitted documentation sufficient to identify the claimed time as having been spent on FOIA matters, i.e., a portion of the 49 hours identified as related to FOIA work.

C. Plaintiffs Have Not Documented Their Hourly Rate

In addition to maintaining contemporaneous time records to document their claimed hours, plaintiffs must also establish that the hourly rate they seek for attorney fees is appropriate.  Here again, plaintiffs' submission is inadequate.

When seeking to recover attorney fees at an hourly rate, a moving party must show that the rates claimed are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stetson, 465 U.S. 886, 895 n. 11 (1984).  See also Islamic Center of Mississippi v. Starkville,

_____

Motion for Judgment on the pleadings, pp. 2-5 (Oct. 1, 2001).

14

<u>Mississippi</u>, 876 F.2d 465, 469 (5th Cir. 1989).  Other than simply stating their own billing rates, plaintiffs' counsel do not provide any evidence of the current prevailing rates in the Brownsville community.  The Rios Law Firm is located in San Antonio, not Brownsville.  The relevant market for determining the proper fee rate is the jurisdiction in which the court sits, not that where an attorney customarily works.  <u>Northwest Coalition for Alternatives to Pesticides v. Browner</u>, 965 F. Supp. 59, 65 (D.D.C. 1997).  Billing rates in San Antonio are not evidence of the appropriate rate in Brownsville.

Further, both the Rios and Garza declarations seek to justify their claimed rates on the basis of the rates charged in civil rights cases.[9]  Plaintiffs, however, are seeking fees for the limited FOIA claim presented here, not the kind of

---

[9] The Rios Declaration appears to be a somewhat hasty "cut and paste" presentation from a prior voting rights case.  Mr. Rioa attempts to justify his rate by asserting that "[t]he time limitations in this case were imposed by the ongoing election schedule, [and] the failure of defendants to obtain pre-clearance of a legal voting ballot before the election schedule started as was done by all other counties in Texas."  Rios Declaration, ¶ 5c.  This case had nothing to do with ballot approvals or any other election law issues.  Rather, Mr. Rios appears to have taken a fee petition from a voting rights case and, with a few alterations, filed it here.  This further underscores that plaintiffs' counsel's recordkeeping and documentation are woefully inadequate to justify the substantial fees sought here.

complex, civil rights cases referred to in their declarations.[10]

Finally, the Rios submission lumps together the hours charged by both Messrs. Rios and Korbel. It is impossible to determine from the Rios submission which hours were billed by which counsel. Moreover, plaintiffs have failed to submit any information at all to justify that the work performed by Mr. Korbel should be compensated at the same $325 per hour rate sought by Mr. Rios. Since according to the signature block on the pleadings in this case, it appears that Mr. Korbel is an associate in the law office where Mr. Rios is the principal, it is logical to assume that Mr. Korbel's billing rate is less than that for Mr. Rios. The petition, however, asks this Court to compensate all of the time from both at the same rate. The federal taxpayer should not be required to pay the price for such sloppy recordkeeping.

D. <u>Plaintiffs' Petition Contains Numerous Improper Charges</u>

1. <u>Travel Hours</u>. Plaintiffs seek recovery for travel

---

[10] Having failed to justify the rates they seek, defendants submit that plaintiffs should recover no more than the prevailing rate applicable under the Equal Access to Justice Act, 28 U.S.C. § 2412, which, using the closest Consumer Price Index available (that for Dallas, Texas), would result in rates of approximately $137 per hour for fees billed in 2001 and $138 per hour for the remainder of the claimed hours. <u>See</u> <u>Shu Chen v. Slattery</u>, 842 F. Supp. 597, 601 (D.D.C. 1994).

time for their counsel at the rate of $325 per hour.  As the

Fifth Circuit has held, travel time is not compensable at an

attorney's normal work rate, Watkins v. Fordice, 7 F.3d 453,

459 (5th Cir. 1993).[11]

2. Lobbying.  Both the Rios and Garza timesheets reveal

charges for time plaintiffs' counsel spent in what appear to

be lobbying activities.  Plaintiffs have failed to show

whether such lobbying activities advanced this litigation in

any way.  Absent such a showing, those hours may not be

charged to defendants.  Watkins, 7 F.3d at 458.[12]

3. Press relations.  One Rios entry includes time for a

press conference.[13]  Such time is not recoverable in this

Circuit absent "evidence regarding the efficacy of the press

---

[11] The Rios declaration lists travel time for the
following dates:  4/9/01; 4/10/01; 4/11/01; 5/10/01; 5/29/01;
7/16/01; 11/13/01; May, 2002; 2/3/03; 2/4/03 (apparently
erroneously listed as 2/4/02.  The Garza declaration lists the
following travel dtaes: 4/9/01; 4/10/01; 5/8/01; 5/9/01;
5/10/01; 5/29/01; 7/10/01; 7/16/01; 8/17/01; 10/1/01; 1/24/01;
4/30/01 (probably meant to be 4/30/02); and 2/4/03.

[12] Garza entries: 5/4/01; 7/10/01; 8/17/01; 1/31/02.  Rios
entries: 4/11/01; 5/10/01.  In addition, the Rios timesheets
show several meetings with "Sec. Cuellar" and "H. Cuellar,"
including a phone call with H. Cuellar "on possible meeting
with Governor" on 4/26/01.  All or some of the following
"Cuellar" entries thus may be associated with lobbying
activities: 4/26/01; 4/27/01;6/4/01;6/28/01; 7/4/01;
7/10/01;8/14/01; 8/15/01;8/17/01; 8/21/01; 8/22/01.

[13] Rios: 5/10/01.

17

conferences...." <u>Watkins</u>, 7 F.3d at 458.

4. <u>Expert witness charges</u>.  The Rios expense sheet lists
expert witness fees for two persons, Dr. Rives ($2750) and Dr.
Chapa (a June, 2001 payment for $1800 and an October, 2001
payment for $1890).  Plaintiffs introduced no testimony or
other evidence from Dr. Rives.  Presumably, his participation
in this case pertained to the adjustment issues, not whether
the adjusted data were exempt from disclosure.  His fees
should be eliminated.

Dr. Chapa did provide a declaration which plaintiffs
filed with their October 1, 2001 opposition to defendants'
motion to dismiss the FOIA claim.  That declaration addressed
the scientific merits of the adjustment decision and had no
bearing on the FOIA claim.  Plaintiffs' requests for
reimbursement of these costs should be denied.

5. <u>Non-FOIA Expenses</u>.  As demonstrated above, plaintiffs
are not entitled to any fees concerning matters unrelated to
the litigation of the FOIA claim.  Nor are they entitled to
compensation for time spent on their administrative FOIA
request.  <u>Northwest Coalition for Alternatives to Pesticides
v. Browner</u>, 965 F. Supp. 59, 65 (D.D.C. 1997).  It therefore
follows that plaintiffs are not entitled to any costs incurred
prior to the submission of their FOIA claim to this Court in

18

the amended Complaint of September 7, 2001.

Conclusion

For the foregoing reasons, plaintiffs' petition for fees and costs should be denied.  Alternatively, the Court should allow compensation only for those hours and costs which can be directly and exclusively attributed to plaintiffs' FOIA claim at a rate below that for which plaintiffs have submitted insufficient documentation.

Respectfully submitted,

ROBERT D. MCCALLUM, JR.
Assistant Attorney General

MICHAEL T. SHELBY
United States Attorney

THOMAS MILLET
Attorney in Charge
D.C. Bar No. 294405
Attorney, Civil Division
Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, D.C. 20044
Tel:(202) 514-3313
Fax:(202) 616-8460
Attorneys for Defendants.

<u>Certificate of Service</u>

I hereby certify that the foregoing was served this 3d day of March, 2003, by overnight delivery, to:

Rolando L. Rios
115 E. Travis
Suite 1024
San Antonio, TX 78205

THOMAS MILLET