IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 4 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CAMERON COUNTY, TEXAS et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. B-01-082 |
| | § | |
| DONALD EVANS, Secretary of the | § | |
| Department of Commerce, et al., | § | |
| Defendants | § | |

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR FEES AND COSTS

### I. Introduction: The government is being disingenuous.

When this case was filed, the defendants fought vigorously against release of the undercount census data arguing that the information requested was protected by the "deliberative process" exception to the plaintiffs' FOIA claim; because of the important and sensitive policy implications that would be divulged by the data, the defendants could not release the data. Indeed, the defendants claimed that the data are not simply raw numbers, but "... a statistical construct that embodies a host of calculations, assumptions, and hypotheses analyzed by professional employees." [Dkt. No. 9 at 15; Thompson Decl. ¶ 26]. They characterized the issues in this case as "important questions of public policy concerning access to the results of an extensive series of scientific inquiries, calculations, and evaluations which the Census Bureau experts have deemed too unreliable for public use." See Defendants' Memorandum in Support of Motion for Stay Pending Appeal, page 3, ¶ 2.

Further, once they lost on the FOIA claim and appealed to the Fifth Circuit seeking a stay of the district court's order, they argued for the stay as follows:

"The Court's recent Order granting judgment on the pleadings to plaintiffs' on their Freedom of Information Act claim also orders defendants to provide them with the

adjusted census data which **are at the heart of all of plaintiffs' claims** here. Compliance with that Order would terminate defendants' ability to seek appellate review by effectively **mooting this case**, as such disclosures, once made cannot be undone." [Emphasis added] See Defendants' Memorandum in Support of Motion for Stay Pending Appeal, page 1 ¶ 2

Now that the defendants have lost their appeal and have been forced by the federal court to release the adjusted census data, the defendants are attempting to avoid the payment of fees and costs as required by law.  To this end, the defendants have changed the characterization of the issues raised and the success obtained in this case.  Now they claim that the data is of no "benefit" to the public and that the FOIA claim was only one of five unrelated claims asserted by the plaintiffs and that the FOIA claim played a "minor role" in this lawsuit. (See pages 4 and 14 of Defendants Memorandum in opposition to Plaintiffs Claim for Fees)

Clearly, the defendants speak with a forked tongue: first they wrongfully withheld the information by claiming important policy reasons; then, after forced by the court to release the information, they change the characterization and importance of the issues raised in this case to avoid the payment of fees and costs as required by law.  This court should not allow the Federal Government to get away with such duplicity.

## II. Entitlement of Fees:

### A. Benefit to the public is derived from the case as well as a benefit to the plaintiffs:

There can be no serious question that a benefit has been derived from release of the data. Defendants are attempting to use their own failure – the inaccuracy of the adjusted data they produced – to their own benefit. They argue that there is no benefit resulting from the release of "wholly unreliable" data; however, defendants are cleverly trying to change the subject.  The benefit derived from release of the data is based on what the "wholly unreliable" data tell us about the assumptions made by the policy makers at the Bureau of the Census to generate the

2

data. The defendants made this very point previously when they vigorously opposed release of the data. These assumptions will be the subject of much discussion, research and recommendations for future policy changes.

Further, undercount data provides extensive materials to the national and local government on who was missed or over counted and how we can minimize the undercount of minorities. As the Supreme Court has stated, the modern census is used for a "galaxy" of secondary purposes, *City of New York v. United States Department of Commerce,* 822 F. Supp. 906, 911 (1993), rev'd 34 F. 3d 1114 (1994), including the distribution of federal funds. *See* 13 U.S.C. § 141(c). (S*ee also* U.S. Dep't of Commerce, Bureau of the Census, Report to Congress: The Plan for Census 2000 (Aug. 1997) (ACensus 2000 Report@). The data, as stated by the defendants, is rich with policy implication and assumptions that have an impact on the accuracy of the counting of the Hispanic population. Simply stated, the released data is presently being used by local governments and university researchers, to measure, on the block level, the accuracy of the census and the undercount data. This analysis will provide vital information about the "statistical construct" used and provide vital information on adjustments that need to be considered for future censuses. Plaintiffs in this case are cities and counties that are home to recent immigrants, growing minority populations, the poor, the homeless, and disproportionately large numbers of children, all of whom are more difficult to count than the rest of the population. *See* Census 2000 Report.

Differential undercounting has a devastating effect on the cities and counties where the undercounted reside. Unless the differential undercount is corrected these jurisdictions will continue to be deprived of their fair share of federal funds -- for schools, crime prevention, health care, transportation and a host of other functions -- that are distributed on the basis of population

3

data. In addition, residents of these areas will continue to be denied an equal voice in their government. (Census 2000 Report at 4, Currey Decl. Exh. A-12.) Release of the undercount data resulting from this litigation will add to the continued dialogue and research directed at conducting an accurate census and there is no doubt as to the benefit obtained in this litigation by the plaintiffs individually and society in general.

Finally, underscoring the general public interest in the adjusted census data, numerous articles have recently appeared in the national media describing potential uses for the data. *See, e.g.*, Mireya Navarro, *Census Missed 103,000 in City, Many in Hispanic Areas, Bureau Data Shows*, N.Y. TIMES, December 7, 2002; Paul Overberg and Douglas Pardue, *Adjusted Census Figures Add 3.3 Million Residents*, USA TODAY, December 6, 2002; Associated Press, *U.S. Won't Appeal Court Ruling on Census Data*, SEATTLE POST-INTELLIGENCER, November 23, 2002. Clearly, the public has benefited from the success obtained by the plaintiffs in this case.

**B. Withholding of data not reasonable:**

Since 1940 -- when the Census Bureau began measuring the number of people it failed to count -- the Bureau has documented an undercount. *See Department of Commerce v. United States House of Representatives*, 525 U.S. at 322 Also, almost a decade ago, the federal courts ordered the defendants to release the undercount data, Assembly *of the State of California v. U.S. Department of Commerce*, 968 F.2d 916 (9th Cir. 1992). Indeed, the defendants could have released the data at the time it was originally requested by the plaintiffs as required by FOIA and continued with the reviews of the data they claim were necessary. This reality and the state of the law as set back in 1992 leads to the conclusion that the denial of the FOIA request was unreasonable and unnecessary. The defendants knew that the law required release of the data,

which is why they decided not to appeal to the Supreme Court and dismiss the appeal at the Fifth Circuit.

Withholding the data as the defendants did in this case was a deliberate attempt to frustrate the very purpose of FOIA: "robust political debate, agency accountability and public disclosure rather than secrecy." *Carter v. United States Department of Commerce,* CA No. 01-868-RE (D. Ore. 2001). Using their governmental authority, their endless resources, and the dilatory litigation strategy, the defendants unjustly succeeded in delaying release of the adjusted data for their own political ends.

## II. <u>REDUCTION OF FEES</u>

### A. <u>Claims Asserted</u>

In this case, besides the FOIA claim, the plaintiffs asserted constitutional claims, equal protection claims pursuant to 42 USC 1983 and the purely legal claims alleging a violation of the Census Act, 13 U.S.C § 195. Concerning the latter claims, the court ruled against the plaintiffs; however, the remaining claims all had some common issue: obtaining the adjusted census numbers, as admitted by the defendants, which was at the heart of all of the plaintiffs' claims. Defendant was refusing to release the adjusted data because, they argued that to do so would undermine their deliberative process by which policies are formulated – Exemption 5 of FOIA. The analysis undertaken to understand the policies that continued, decade after decade, to result in the undercount of Hispanics is the same analysis necessary for evaluating equal protection and due process claims asserted by the plaintiffs.

Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. In such a case:

... plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff ....In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart*, 461 U.S. 424, 436. See also *Davis v. County of Los Angeles*, 8E.P.D. 9444 (CD Cal. 1974). [1]

Recently the Fifth Circuit reaffirmed this approach and citing to *Eckerhart* ruled:

When the plaintiff raises several claims and those claims involve a common core of facts or related legal theories, the district court need not attempt to divide counsel's hours among the claims. Instead, it should focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. at 435. The most critical factor in determining a fee award is the "degree of success obtained."

*Romaguera v. Gegenheimer*, 162 F. 3d 893, 896 (5th Cir. 1998), as amended on denial of rehearing, 169 F. 3rd 223 (5th Cir. 1999).

This is precisely what happened in this case. The plaintiffs asserted several related claims and succeeded in the "heart of all claims"-- the defendants' own words – making it virtually impossible to divide the hours on a claim-by-claim basis.

The only claim that was unrelated to the FOIA claim was the Census Act claim on which, according to the time records, attorney Rios dedicated 4.2 hours. (See Time Records for Rios, entry for May 19, 2001 attached to the Plaintiffs Motion for Fees) That claim was purely a legal claim and did not require extensive work. In accordance with *Hensley v. Eckerhart, Id.,* these

---

[1] Some courts have suggested that prevailing plaintiffs generally should receive a fee based on hours spent on all nonfrivolous claims. See, e. g., Sherkow v. Wisconsin, 630 F.2d 498, 504-505 (CA7 1980); Northcross v. Board of Educ. of Memphis City Schools, 611 F.2d 624, 636 (CA6 1979), cert. denied, 447 U.S. 911 (1980); Brown v. Bathke, 588 F.2d 634, 636-637 (CA8 1978). Still other Courts of Appeals have held that recovery of a fee for hours spent on unsuccessful claims depends upon the relationship of those hours expended to the success achieved. See, e. g., Copeland v. Marshall, 205 U.S. App. D.C. 390, 401-402, n. 18, 641 F.2d 880, 891-892, n. 18 (1980) (en banc); Jones v. Diamond, 636 F.2d 1364, 1382 (CA5) (en banc), cert. dism'd, 453 U.S. 950 (1981); Gurule v. Wilson, 635 F.2d 782, 794 (CA10 1980) (opinion on rehearing); Lamphere v. Brown Univ., 610 F.2d 46, 47 (CA1 1979).

hours should be discounted. Moreover, attorney Garza has excluded from his billing statement all hours devoted to losing issues. (See Time Records of Jose Garza attached to Plaintiffs' Motion for Attorneys' Fees).

## B. Documentation of the Hours Dedicated to this Litigation and the Rate Requested.

Defendant asserts that the hours documented by the plaintiffs attorneys are inadequate and should therefore, be reduced. Further, the defendant takes issue with the rate claimed. The time records submitted are based on daily chronology including the date, general subject, the amount of time expended and the person performing the activity; this specificity is consistent with *Hensley* Id at 438 and nt. 12. The submitted time records are identical to records submitted in many other federal cases by these attorneys in over 20 of practice as documented by the submitted Resumes.    Further, attached as **Exhibit A** is a three (3) judge federal court order requiring the State of Texas to pay attorneys Rios and Garza $325 per hour for federal work done on a voting rights case.

## C. Compensation for Travel Time:

A review of the time sheets provided by attorneys Rios and Garza indicate the 94.55 hours for Rios and 65.75 hours for Garza were documented travel time. Travel time was necessary to advance this litigation; there were two county and over thirty municipal governments were involved as plaintiffs in this case. Travel time was necessary to keep them informed on the progress of this litigation; however, the fee rate for travel should be reduced as suggested by the defendant. Plaintiffs would request that travel time be compensated at a rate of $175 per hour. This adjustment would be consistent with *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) when one considers that *Fordice* was decided 10 years ago. Taking this adjustment into account would result in the following:

|  | Hrs. | Rate | Total |
|---|---|---|---|
| Rolando L. Rios: | 434.15 X | $325 = | $141,098.75 |
| Travel: | 94.55 X | $175 = | $ 16,546.25 |
| Less: | 4.2 X | $325 = | $ 1,365.00 |
| Melissa Castro: | 62.2 X | $150 = | $ 9,330.00 |
| Jose Garza: | 98.25 X | $325 = | $ 31,931.25 |
| Travel: | 65.75 X | $175.00 = | $ 11,506.25 |

Total Claim after adjustment          $209,047.50

## C. Expert Fee

Expert fees are justified in this case. Plaintiffs had to obtain expert consultation to properly analyze the defendants' claim that the information requested fell within Exemption 5 of FOIA -- deliberative process by which policies are formulated. Both Dr. Rives and Dr. Chapa are experts familiar with the "statistical construct that embodies a host of calculations, assumptions, and hypotheses" that was used by the defendant to claim Exemption 5. These experts were necessary to respond to defendant's claims and should be paid as necessary for the proper and successful prosecution of this case.

DATED this 24th day of March 2003.

Respectfully submitted,

ROLANDO L. RIOS
SBN 16935900
FBN: 14370
LAW OFFICES OF ROLANDO L. RIOS
MILAM BUILDING
115 E. Travis, Suite 1024
San Antonio, Texas 78205
Ph   (210) 222-2102
Fax (210) 222-2898
rrios@rolandorioslaw.com

JOSE GARZA
SBN: 07731950
FBN: 1959
1913 Fordham
McAllen, Texas 78504
Ph (956) 928-0088
garzpalm@aol.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Plaintiffs' Reply to Defendant's Opposition to Plaintiffs Request for Attorney Fees and Costs has been sent by First Class Mail on this the 24th. day of March, 2003 to:

Mr. Thomas Millet, Esq.
Federal Programs Branch
United Stated Department of Justice
901 E. St. N.W.
Washington, D.C. 20530

By: _Rolando L. Rios_
ROLANDO L. RIOS, ESQ.
ATTORNEY FOR THE
PLAINTIFFS

**EXHIBIT A**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MAY 2 1 2002
DAVID J. MALAND CLERK
BY _____
DEPUTY

| | | |
|---|---|---|
| SIMON BALDERAS, ET AL. | § | |
| Vs. | § | NO. 6:01CV158 |
| STATE OF TEXAS, ET AL. | § | |

This Filing Applies to: All Actions

## ORDER

The state defendants have filed a motion to amend the court's February 20, 2002 order on

attorneys' fees (#502). The state defendants have also filed an amended Rule 59(e) motion to alter

or amend the court's order on attorney's fees (#503). Both motions are denied.

The state first urges that Congresswomen Johnson and Lee did not prevail but, if they did,

the court should scale down their fee application. We awarded these parties their fees incurred in

the congressional portion of the litigation. We determined in our order, and we emphasize again

today, that these parties prevailed in the congressional litigation because they succeeded on the

merits of their discrete agenda—preserving the minority nature of their districts.

The state argues that the minority nature of the districts was never in jeopardy, because the

state agreed that a new plan needed to be drawn that preserved the minority nature of the districts.

We considered that argument when we made our original award. To state directly what was implicit

in our attorney's fees order, the state failed to draw any congressional plan. Moreover, an observer

might have viewed the state's pre-trial and trial positions as using the existing minority districts

(including those of Congresswomen Johnson and Lee) to leverage the remaining districts into a

politically palatable plan. The remedies proposed by these Congresswomen were close to the court

drawn plan. Congresswomen Johnson and Lee are entitled to recover their fee requests,

1

unencumbered by any reduction for partial success. This was complex voting rights litigation. The hours sought are reasonable and the hourly rate is in line with the market and the state's stipulations with other counsel. The rate is far less than the state paid its own counsel.[1] The court awards Congresswomen Johnson and Lee their attorney's fees in the amount of $101,675.00 and costs of court in the amount of $14,875.36.[2]

The state also asserts that MALC and the Balderas plaintiffs were not prevailing parties in the state House of Representatives litigation, or, alternatively, that their success was limited and the court ought to reduce the amounts sought in their applications. We rejected this argument and do

---

[1]    In our calculation of attorney's fees, we first "calculate[d] a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir.1999). We also considered whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case, and the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

The *Johnson* factors are: (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases. *Id.* at 717-19. We considered these factors in making our fee determinations with respect to the Congresswomen, the Balderas plaintiffs and MALC.

To the extent that any *Johnson* factors were subsumed in the lodestar, we did not reconsider them when we determined whether any adjustment to the lodestar was required. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998).

[2]    All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client. *See Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990); *International Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1185 (5th Cir.1986).

2

MAY-21-2002 TUE 01:51 PM ROLANDO I. RIOS FAX No. 210 222 2898 P. 003
Case 01-cv-00082 Document 94 Filed in TXSD on 03/24/2003 Page 13 of 15

14:19 MAY 21, 2002                                                    #169688  PAGE: 4/6

so again. The state's catalyst argument fails. We rendered an enforceable judgment in this case that altered the legal relationship between the parties to this suit. The Section 2 and Section 5 issues under the Voting Rights Act overlapped. We heard similar testimony and took much of the same proof into account in remedying, again, the state's failure to draw a legal plan. These facts reinforce our decision that MALC and the Balderas plaintiffs were prevailing parties in the state House of Representatives case. We are not persuaded that we must reduce their awards and decline to do so.

We award specific amounts of fees and costs to the Balderas plaintiffs and MALC. We reach the same conclusion regarding the complexity of the case and the hourly rates sought by these parties as we did on the congressional side. There is an inconsistency in claimed hourly rates that must be resolved: The Balderas plaintiffs originally represented that reasonable hourly rates for Ms. Perales and Mr. Kaufman, respectively, were $175 and $200 per hour. In their amended motion, however, the Balderas plaintiffs increased the rates sought to $325 per hour for each attorney. We decline to allow the increase. We are persuaded that the rate originally asserted and number of hours claimed by the Balderas plaintiffs are reasonable. We therefore award the Balderas plaintiffs attorney's fees in the amount of $85,990.00. Recoverable costs to the Balderas plaintiffs are awarded in the amount of $38,628.46.

MALC seeks to recover a more substantial fee. The court is familiar with the complexity of the case and also with the fact that the state has stipulated that a reasonable hourly rate charged by the attorneys for MALC is $325/hour. Moreover, MALC has submitted detailed time entries, unchallenged by the state, in support of its fee request. The court has independently reviewed the request and concludes that most of the hours charged are reasonable, in light of MALC's participation in this litigation and the limits set by the court in its earlier fee order. The court awards MALC most of its requested fees, although we find some duplication of the effort in Messrs. Rios's

3

and Garza's billed hours and in their work in the congressional phase of the case that supported the state House phase. Therefore, we have adjusted downward the number of hours sought by MALC.

As to MALC, we find that a reasonable number of hours expended in this litigation, including the administrative effort, responding to post-trial motions and addressing attorney's fees issues is 1350 hours. The court further finds that 1200 of those hours were reasonably incurred by Messrs. Garza and Rios, 110 hours were reasonably spent by Ms. Castro, an associate attorney in Mr. Rios's office, and 40 hours were reasonably spent by Mr. Ruiz, the legal assistant in Mr. Rios's office. We find support for the reasonableness of these hours when we consider the actual hours billed by counsel as reflected by their time sheets and the quick pace of this case. We also rely on our own observations of counsels' work product and trial participation. The court is mindful of the fact that the attorneys involved practice in small firms and that their ability to handle other work during the pendency of this case was significantly impacted. We required the parties to perform many tasks in a short period of time. The time imposed on the court for completing its job demanded it.

As to rates, MALC asserts that a reasonable hourly rate for Messrs. Garza and Rios is $325/hour, a reasonable hourly rate for first year associates at Mr. Rios's firm is $125/hour, and a reasonable hourly rate for legal assistants is $65/hour. We find these rates to be reasonable in the context of this case and, particularly, in light of the market and the state's stipulation as to the rates charged by Messrs. Garza and Rios.

Based on these figures, the court awards MALC attorney's fees in the amount of $406,350.00. The court declines any additional adjustment to the figure after considering the factors set forth in *Johnson v. Ga. Highway Express*. MALC's out-of-pocket costs for copying, mileage, travel, long distance, and related expenses are the sort normally charged to fee paying clients and

4

are found to be reasonable in the amount of $12,810.75.

The court denies the state's request for additional opportunity to confer with any of the prevailing parties on the amounts at issue in the fee award. The state waived any opportunity to do so by failing to take advantage of the time periods set forth in our previous order.

To sum up: We deny the state's requests to amend our fee order. We award fees and costs in the amount set forth in this order to the parties named in this order. We have granted MALC's motion for leave to file a surreply (#518) and denied the state's motion to strike (#517). As we did on the merits, we have considered fully the positions of all parties on the fee applications and have concluded that task. Our view of the record here is that it is now closed. We DENY AS MOOT any remaining motions.

So Ordered and Signed this 17th day of May, 2002.


PATRICK E. HIGGINBOTHAM
UNITED STATES CIRCUIT JUDGE


JOHN HANNAH, JR.
UNITED STATES DISTRICT JUDGE


T. JOHN WARD
UNITED STATES DISTRICT JUDGE

5